**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02611-MSK-STV

MATTHEW COOPER and
MARY COOPER, jointly as the Guardians
and next friends of C.C.,

        Plaintiffs,

v.

INSTANT BRANDS INC.,
f/k/a DOUBLE INSIGHT INC.,
d/b/a INSTANT POT COMPANY,
GUANGDONG MIDEA CONSUMER
ELECTRIC MANUFACTURING CO LTD.,
AMAZON.COM, INC.,
AMAZON.COM LLC,
AMAZON SERVICES LLC,
AMAZON SERVICES COLORADO LLC, and,
AMAZON.COM SERVICES, INC.,

        Defendants.

---

### (CORRECTED) SECOND AMENDED COMPLAINT AND JURY DEMAND

---

### **PARTIES**

1.     Plaintiff Matthew Cooper resides in Highlands Ranch, Douglas County, Colorado, and is a citizen of the State of Colorado.

2.     Plaintiff Mary Cooper resides in Highlands Ranch, Douglas County, Colorado, and is a citizen of the State of Colorado.

3.     C.C., a minor, resides in Highlands Ranch, Douglas County, Colorado, and is a citizen of the State of Colorado.

4.     At all times relevant hereto, Plaintiffs Matthew Cooper and Mary Cooper were and are legally married to each other and reside together as husband and wife in Douglas County, Colorado.

5.     C.C., a minor, is the daughter of Plaintiffs Matthew Cooper and Mary Cooper.

6.     C.C., a minor, was born on January 18, 2008, and is presently 10 years old.

7.     Defendant Instant Brands Inc., is a Canadian corporation with its principal place of business at 135 Michael Cowpland Drive, Suite 120, Kanata, ON, K2M 2E9, Canada, and a mailing address of Suite 383, 11-300 Earl Grey Drive, Ottawa, Ontario, K2T 1C1, Canada, and as such is deemed to be a citizen of the Country of Canada.

8.     Defendant Instant Brands Inc., does business as Instant Pot Company.

9.     Defendant Instant Brands Inc. was formerly known as Double Insight Inc., having changed its name from Double Insight Inc. to Instant Brands Inc. on May 5, 2018.

10.     Double Insight, Inc. did business as Instant Pot Company.

11.     Defendant Instant Brands Inc. is the same corporate entity that was formerly known as Double Insight Inc.

12.     Under each corporate name, Instant Brands Inc. and Double Insight Inc., this entity has held itself out as doing business as Instant Pot Company.

13.     Defendant Instant Brands Inc. itself, or through third-parties acting at its request, manufactured the Instant Pot® that is in issue in this civil action.

14.     Defendant Instant Brands Inc. itself, or through third-parties acting at its request, manufactured the Instant Pot® that is in issue in this civil action.

2

15.     Defendant Instant Brands Inc. itself, or through third-parties acting at its request, imported the Instant Pot® that is in issue in this civil action.

16.     Defendant Instant Brands Inc. itself, or through third-parties acting at its request, distributed the Instant Pot® that is in issue in this civil action.

17.     Defendant Instant Brands Inc. itself, or through third-parties acting at its request, sold the Instant Pot® that is in issue in this civil action.

18.     Defendant Instant Brands Inc. itself, or through third-parties acting at its request, marketed the Instant Pot® that is in issue in this civil action.

19.     Defendant Instant Brands Inc. itself, or through third parties acting at its request, introduced into interstate commerce, and into the State of Colorado, the Instant Pot® that is in issue in this civil action.

20.     Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., is a Chinese Corporation, with its principal place of business located in Beijiao Shunde Foshan, Guangdong 528311 China, and as such is deemed to be a citizen of the country of China.

21.     Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., is not registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

22.     Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., is located in Beijiao Shunde Foshan, Guangdong 528311 China.

23. Pursuant to C.R.S. §13-21-401, the Defendant Instant Brands Inc., f/k/a Double Insight Inc., was the manufacturer of the Instant Pot® that is the subject of this civil action.

24. Defendant Amazon.com, Inc., is a Delaware Corporation, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109, and as such is deemed to be a citizen of the State of Delaware and a citizen of the State of Washington.

25. Defendant Amazon.com, Inc., is not registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

26. Defendant Amazon.com LLC is a Delaware Limited Liability Company, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

27. Defendant Amazon.com LLC, is a subsidiary of Defendant Amazon.com, Inc. Upon information and belief, the only member of and 100% owner of Amazon.com LLC is Amazon.com, Inc., a Delaware Corporation, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. As such, Defendant Amazon.com LLC is deemed to be a citizen of the State of Delaware and a citizen of the State of Washington.

28. At the time of the incident that is the subject of this civil action, Defendant Amazon.com LLC., was registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

29.     On January 17, 2018, Defendant Amazon.com LLC, relinquished its authority to do business in the State of Colorado, and stated that it will not maintain a registered agent in this state and service of process may be addressed to the entity and mailed to the principal address pursuant to section 7-90-704 (2), C.R.S.

30.     At the time of the incident that is the subject of this Complaint, Defendant Amazon Services LLC was a Nevada Limited Liability Company, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

31.     Defendant Amazon Services LLC, is a wholly owned subsidiary of Defendant Amazon.com, Inc.  Upon information and belief, the only member and 100% owner of Amazon Services LLC is Amazon.com, Inc., a Delaware Corporation, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.  As such, Defendant Amazon Services LLC is deemed to be a citizen of the State of Delaware and a citizen of the State of Washington.

32.     At the time of the incident that is the subject of this civil action, Defendant Amazon Services LLC., was registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

33.     On June 29, 2017, Defendant Amazon Services LLC filed a Statement of Change with the Colorado Secretary of State, changing its entity name of record to Amazon Services Colorado LLC.  Upon information and belief, the only member and 100% owner of Amazon Services Colorado LLC is Amazon.com, Inc., a Delaware Corporation, with its principal place of business located at 410 Terry Avenue North,

Seattle, Washington 98109.   As such, Defendant Amazon Services Colorado LLC is deemed to be a citizen of the State of Delaware and a citizen of the State of Washington.

34.     The Registered Agent of Amazon Services Colorado LLC is Corporation Service Company, 1900 West Littleton Boulevard, Littleton, Colorado 80120.

35.     Defendant Amazon.com Services, Inc. is a Delaware Corporation, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109, and as such is deemed to be a citizen of the State of Delaware and a citizen of the State of Washington.

36.     Defendant Amazon.com Services, Inc., is a subsidiary of Defendant Amazon.com, Inc.

37.     Defendant Amazon.com Services, Inc. is registered with the office of the Colorado Secretary of State to do business in the State of Colorado.

38.     The Registered Agent of Amazon Services Colorado LLC is Corporation Service Company, 1900 West Littleton Boulevard, Littleton, Colorado 80120.

## **JURISDICTION AND VENUE**

39.     Defendant Instant Brands Inc. distributed its products, known as various models of the Instant Pot®, to various retailers in the state of Colorado, including Walmart, Target, and Bed Bath and Beyond, who sold its products to consumers in the State of Colorado.

40.     Defendant Instant Brands Inc. marketed its products, known as various models of the Instant Pot®, on the internet, expecting and knowing that some of those products would be purchased by consumers in the state of Colorado.

41.     Defendant Instant Brands Inc. distributed it products, known as various models of the Instant Pot®, to distributors located in the United States, knowing that some of those products would be purchased by and shipped to consumers in the State of Colorado.

42.     One or more of the Amazon Defendants sold the Instant Pot® that is the subject of this civil action to the Plaintiffs and arranged for its delivery to the Plaintiffs in the State of Colorado.

43.     This District Court has personal jurisdiction and subject matter jurisdiction as one or more of the Defendant Instant Brands Inc. and the Amazon Defendants has transacted business in the State of Colorado, and the amount in controversary is in excess of $75,000, exclusive and interest and court costs, and there is diversity of citizenship between the Plaintiffs and each of the Defendants.

44.     This District Court has personal jurisdiction and subject matter jurisdiction as one or more of the Defendants has transacted business in the State of Colorado and this or those Defendants committed a tortious act within the State of Colorado, the amount in controversary is in excess of $75,000, and there is diversity of citizenship between the Plaintiffs and each of the Defendants.

45.     Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., is not subject to the jurisdiction of this United States District Court, or any other Court in the State of Colorado.

46.     Venue is proper in this District Court as the Plaintiffs reside in Douglas County, Colorado, within the jurisdictional boundaries of this United States District Court,

and a substantial part of the events giving rise to this claim occurred in Douglas County, Colorado.

## **FACTUAL ALLEGATIONS**

47.     At all times relevant to the issues alleged in this Amended Complaint Defendant Instant Brands Inc.,  f/k/a Double Insight, Inc., doing business as Instant Pot Company, [hereinafter referred to as "Instant Brands"]  was engaged in the business of designing, manufacturing, importing, marketing, distributing, selling, and/or introducing into interstate commerce, including to the State of Colorado, and into Douglas County, Colorado, either directly or indirectly through third-parties or related entities, the Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60 V2 [hereinafter "Instant Pot®"], that is in issue in this civil action.

48.     The design specifications for the Instant Pot® that is in issue in this civil action were given to Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., by or at the request or direction of Defendant Instant Brands.

49.     At the request or direction of Defendant Instant Brands, Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., manufactured the Instant Pot® that is in issue in this civil action.

50.     At the request of Defendant Instant Brands, Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., labeled and packaged the Instant Pot® that is in issue in this civil action.

51.     The English language information that appears on the labeling and packaging of the Instant Pot® that is in issue in this civil action was given to Defendant

Guangdong Midea Consumer Electric Manufacturing Co Ltd., by or at the request of Defendant Instant Brands.

52.     At the request of Defendant Instant Brands, Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., a User Manual was included in the packaging of the Instant Pot® that is in issue in this civil action.

53.     The English language information that appears in the User Manual for the Instant Pot® that is in issue in this civil action was given to Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., by or at the request of Defendant Instant Brands.

54.     On or about July 12, 2016, Plaintiff Mary Cooper purchased an Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60 V2.

55.     Plaintiff Mary Cooper purchased the Instant Pot® from her home in Douglas County, Colorado, by a transaction conducted over the Internet.

56.     The Instant Pot® purchased by Plaintiff Mary Cooper was designed, manufactured, imported, introduced into interstate commerce, promoted, marketed, distributed and sold to Plaintiff Mary Cooper by Defendants Instant Brands, Inc. and/or Double Insight, Inc., d/b/a Instant Pot Company, indirectly through third-parties acting on their behalf.

57.     One or more of the Defendants Amazon.com, Inc., Amazon.com LLC, Amazon Services LLC, Amazon Services Colorado LLC, and/or Amazon.com Services, Inc., [hereinafter collectively referred to as "Amazon"] entered into a contract with

Defendant Instant Brands Inc. to market, sell, distribute and deliver Instant Pot® products to consumers.

58.     One or more of the Amazon Defendants marketed the Instant Pot® that is the subject of this civil action on one or more of its websites.

59.     One or more of the Amazon Defendants sold the Instant Pot® that is the subject of this civil action to the Plaintiffs.

60.     One or more of the Amazon Defendants distributed the Instant Pot® that is the subject of this civil action to the Plaintiffs.

61.     One of more of the Amazon Defendants profited from the sale of the Instant Pot® that is the subject of this civil action to the Plaintiffs.

62.     One of more of the Amazon Defendants paid the Defendant Instant Brands Inc. some sum of money for its share of the sale price of the Instant Pot® that is the subject of this civil action.

63.     The Instant Pot® purchased by the Plaintiff Mary Cooper was designed, manufactured, exported, and introduced into interstate commerce, pursuant to the specifications of, and at the request and direction of the Defendant, Instant Brands Inc.

64.     On or about July 17, 2016, the Instant Pot® purchased by Plaintiff Mary Cooper was delivered to her home in Douglas County, Colorado.

65.     On September 27, 2017, Plaintiff Mary Cooper, and her then nine-year-old daughter, C.C., were cooking food in their home in Douglas County, Colorado, using the Instant Pot® that had been purchased by Plaintiff Mary Cooper.

66.    At the above said time and place the Instant Pot® was being used according to the directions and instructions that had accompanied the product at the time of its sale and delivery to Plaintiff Mary Cooper.

67.    The Instant Pot® had contained various food ingredients, spices, and water, and was filled to a level below the 2/3 fill line.

68.    The Instant Pot® lid had been closed securely; the steam release handle was aligned to the "Sealing" indicator; the Instant Pot was turned on in the "Soup" mode; and there was no indication that the lid had not been properly engaged and secured.

69.    When the Instant Pot® beeped, indicating that the cooking cycle was completed, the steam release handle was moved to the "Venting" position, where it remained until the steam stopped venting, and the float valve indicator had dropped down.

70.    After waiting an appropriate time, the lid handle was then moved to disengage so that the lid could be opened.  As the movement to disengage the lid was occurring, the lid blew off, releasing with sudden and great force the steam and pressure that was still contained within the Instant Pot®, and spewing its scalding contents onto the face, shoulder, arm, chest and torso of C.C.

71.    As a direct and proximate result of the above described sudden release of pressure, and discharge of the scalding contents of the Instant Pot®, C.C. sustained serious, painful, disfiguring, and permanent scalding burn injuries to her shoulder, arm, chest and torso, and other injuries and damages as set forth in this Amended Complaint.

## **ALLEGATIONS OF DEFECTIVE PRODUCT**

72.     The Instant Pot® was designed with the specification that lid cannot be opened while the contents of the pot were under pressure.

73.     The Instant Pot® was manufactured with the specification that lid cannot be opened while contents of the pot were under pressure.

74.     The intended safety feature of the Instant Pot® that the lid cannot be opened while contents of the pot were under pressure was not adequately tested in design and development of the product to ensure that it was effective 100% of the time under the conditions of reasonably expected use.

75.     The intended safety feature of the Instant Pot® that the lid cannot be opened while contents of the pot were under pressure was not adequately tested in design and development of the product to ensure that it was failsafe under the conditions of reasonably expected use.

76.     Defendants marketed and promoted the Instant Pot® with the claim, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened."

77.     Defendants marketed and promoted the Instant Pot® with the claims, "Safe, Convenient and Dependable!", "10 Proven Safety Mechanisms", "Pressure Regulator Protection" and "Leaky Lid Protection" appearing on the box in which it was delivered to the Plaintiffs.

78.     Defendants marketed and promoted the Instant Pot® with the claim, "[The Instant Pot] . . . protects you with 10 proven safety mechanisms and patented technologies."

12

79.   Defendants marketed and promoted the Instant Pot® with the claim, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened." [User Manual pg. 22; copy available at https://instantpot.com/wp-content/uploads/2017/07/DUO-Series-Manual-English-January-24-2018-web.pdf.]

80.   Defendants marketed and promoted the Instant Pot® with the claim and representation, "Instant Pot is carefully designed to eliminate many common errors that may cause harm or spoil food."  [See https://instantpot.com/portfolio-item/duo-6-quart/.]

81.   Defendants marketed and promoted the Instant Pot® with the claim, "With the steam release open, pressure never builds up in the cooking pot."  [See https://instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.]

82.   Defendants marketed and promoted the Instant Pot® with the claim and representation, "It [Instant Pot] passed the stringent UL certification giving you uncompromised safety and peace of mind. . . ." [See https://instantpot.com/portfolio-item/duo-6-quart/.]

83.   Defendants marketed and promoted the Instant Pot® with the claim and representation, "It [Instant Pot] . . . protects you with 10 proven safety mechanisms and patented technologies."  [See https://instantpot.com/portfolio-item/duo-6-quart/.]

84.   Defendants marketed and promoted the Instant Pot® with the claim, "All Instant Pot models are 3rd Generation electric pressure cookers." [See https://instantpot.com/portfolio-item three-generations-of-electric-pressure-cookers/.]

85.   Defendants marketed and promoted the Instant Pot® with the claim, "3rd Generation Electric Pressure Cookers are Equipped with Smart Programming and

Enhanced    Safety."    [See    https://instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.]

86.    Defendants marketed and promoted the Instant Pot® with the claim, "Instant Pot® Duo is a smart Electric Pressure Cooker designed to be Safe, Convenient and Dependable."  [See https://instantpot.com/portfolio-item/duo-6-quart/.]

87.    Defendants marketed and promoted the Instant Pot® with the claim, "With the microprocessor programs, more sophisticated safety mechanisms become possible. For instance, one common mistake is misplacing the stream release at the open position while starting cooking.  With the steam release open, pressure never builds up in the cooking  pot."  [See  https://  instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.]

88.    Defendants marketed and promoted the Instant Pot® with the claim, "With the advance in pressure and temperature sensor accuracy, the 3rd Generation electric pressure cookers implement sophisticate control with digital technology.  Two most remarkable features are Smart Programming and Enhanced Safety.  These features greatly improve cooking result, maintain consistence and enhance safety."  [See https://instantpot.com/portfolio-item/three-generations-of-electric-pressure-cookers/.]

89.    Defendants marketed and promoted the Instant Pot® with the claim, "These greatly improve cooking result and maintain consistence.  Instant Pot is carefully designed to eliminate many common errors that may cause harm or spoil food.  It passed the stringent  UL  certification  giving  you  uncompromised  safety  and  peace  of  mind  and

protects you with 10 proven safety mechanisms and patented technologies."  [See https://instantpot.com/portfolio-item/duo-6-quart/.]

90.    Defendants marketed and promoted the Instant Pot® with the claim, "Instant Pot® Duo uses the latest 3rd generation technology with an embedded microprocessor, which monitors the pressure and temperature, keeps time and adjusts heating intensity. 3 temperatures in 'Sauté' for searing, simmering or thickening and 3 temperatures in 'Slow Cook' to provide greater flexibility."  [See https://instantpot.com/portfolio-item/duo-6-quart/.]

91.    Instructional information provided with the sale of the Instant Pot® expressly stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened."  [Instant Pot User Manual, pg. 8, Revision June 29, 2015.]

92.    The design and performance of the Instant Pot® is subject to certain industry standards, including but not limited to Underwriters Laboratories [UL] Standard 136 (8th Edition), Standard for Pressure Cookers; American Society for Testing and Materials [ASTM], ASTM F1217 – 17, Standard Specification for Cooker, Steam; and American National Standards Institute [ANSI].

93.    Pursuant to applicable industry standards, a pressure cooker sold for consumer use should not be designed or constructed in such a way that the lid can be opened by the consumer when the contents of the pot are still under pressure.

94.    The Instant Pot® in general, and the Instant Pot® purchased by the Plaintiff specifically, was not merchantable, and was unreasonably dangerous for its intended

and/or reasonably foreseeable uses in that it was and is unreasonably dangerous under Colorado product liability law as a result of one or more, or a combination, of the following:

1) the Instant Pot® was designed in such a way that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

2) the Instant Pot® was manufactured in such a way that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when the lid was opened;

3) the Instant Pot® was designed in such a way that the product would indicate that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened;

4) the Instant Pot® did not comply with applicable UL standards;

5) the Instant Pot® did not comply with applicable ASTM standards;

6) the Instant Pot® did not comply with applicable ANSI standards;

7) the Instant Pot® was manufactured in such a way that the product would indicate that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened;

8) the Instant Pot® User Manual stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," when that in fact was not true.

9) the Instant Pot® User Manual stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," when in fact the lid could be opened when the float valve was down, causing scalding hot contents to erupt from the pot when the lid was opened;

10) the Instant Pot® was designed in such a way that the float valve could be in the down position when the contents were still under pressure, rendering the safety feature of locking the lid infective, causing scalding hot contents to erupt from the pot when the lid was opened; and,

11) the Instant Pot® was designed in such a way that the float valve, an intended safety feature, intended to lock the lid and prevent the opening of the lid when the device was under pressure, was not effective, causing the lid to be opened when the device was under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

95.   The Instant Pot® purchased by Plaintiff Mary Cooper was dangerous to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that the Instant Pot® was designed in such a way that the ordinary consumer would not contemplate that the lid could be opened when the float valve was down, and the contents were still under

pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

96.     The Instant Pot® purchased by Plaintiff Mary Cooper was dangerous to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that the Instant Pot® was manufactured in such a way that the ordinary consumer would not contemplate that the lid could be opened when the float valve was down, and the contents were still under pressure, causing scalding hot contents of the Instant Pot® to erupt from the pot when the lid was opened.

97.     Prior to July 12, 2016, the Defendants had received notice that in some of the Instant Pot® products that had been sold, the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened.

98.     Prior to July 12, 2016, the Defendants had received notice that in some of the Instant Pot® products that had been sold, the product would indicate that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened.

99.     Prior to July 12, 2016, the Defendants had received notice that in some of the Instant Pot® products that had been sold, the Instant Pot® was manufactured in such a way that it would indicate that the contents were not under pressure, when in fact they were, causing scalding hot contents to erupt from the pot when the lid was opened.

100.   Prior to July 12, 2016, the Defendants had received notice that the statement in the Instant Pot® User Manual, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," was not true.

101.   Prior to July 12, 2016, the Defendants had received notice that the intended safety feature for preventing the lid from being opened when the contents were under pressure was inadequately designed, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

102.   Prior to July 12, 2016, the Defendants had received notice that some of the safety devices intended for preventing the lid from being opened when the contents were under pressure were defectively manufactured, causing scalding hot contents to erupt from the pot when the lid was opened by consumers, and causing injury.

## ACCRUAL OF THIS CAUSE OF ACTION

103.   Prior to September 27, 2017, Plaintiffs had neither knowledge nor notice that there was any defect in the design, manufacture or labeling of the Instant Pot®.

104.   Prior to September 27, 2017, Plaintiffs, and their minor daughter C.C., had not suffered any injury from the use of the Instant Pot®.

105.   It was not until September 27, 2017, Plaintiffs first had any notice or knowledge that the Instant Pot® was defective.

106.   Plaintiffs' cause of action, as alleged in this Amended Complaint against Defendants, did not accrue until the date of September 27, 2017.

## PLAINTIFFS' INJURIES AND DAMAGES

107.    As a direct and proximate result of the defects in, and the failure of, the Instant Pot®, Plaintiffs' minor daughter, C.C. has sustained injuries and damages including, but not limited to:

>    (a) severe burn injuries to her body from scalding;

>    (b) past pain and anguish, both in mind and in body;

>    (c) future pain and anguish, both in mind and in body;

>    (d) future medical expenses, including future plastic surgery;

>    (e) loss of enjoyment of life;

>    (f)  permanent disfigurement; and,

>    (g) physical impairment.

108.    As a direct and proximate result of the defects in, and the failure of, the Instant Pot®, Plaintiffs Matthew Cooper and Mary Cooper have sustained injuries and damages including, but not limited to, past and future medical bills associated with the care and treatment of their daughter, C.C.

## CAUSES OF ACTION

### COUNT I
### STRICT PRODUCT LIABILITY
### Colorado Product Liability Act, C.R.S. §13-21-401, *et seq.*

109.    Plaintiffs incorporate by reference the facts and allegations set forth in the paragraphs above of this Amended Complaint.

110.    The Defendants are subject to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, *et. seq.* for products that they manufactured and which where were sold or distributed to citizens of the State of Colorado.

111.    The Instant Pot® purchased by Plaintiff Mary Cooper is a "product", as that word is used in the Colorado Product Liability Act.

112.    Defendants were the manufacturers of the Instant Pot® purchased by Plaintiff Mary Cooper, as the word "manufacturer" is defined by the Colorado Product Liability Act, C.R.S. §13-21-401 (1).

113.    Defendants were the seller(s) of the Instant Pot® purchased by Plaintiff Mary Cooper, as the word "seller" is defined by the Colorado Product Liability Act, C.R.S. §13-21-401(3).

114.    Pursuant to the Colorado Product Liability Act, the Defendants owed a duty to the Plaintiffs and their minor daughter to manufacture and sell a product that was reasonably safe in construction, which did not materially deviate from applicable design specifications, or otherwise deviate in some material way from otherwise identical units in Defendants' product line.

115.    Pursuant to the Colorado Product Liability Act, the Defendants owed a duty to the Plaintiffs to design, manufacture, assemble, test, label, distribute, and sell a product that was not unreasonably dangerous.

116.    Pursuant to the Colorado Product Liability Act, the Defendants owed a duty to the Plaintiffs to design, manufacture, assemble, test, label, distribute, and sell a product

that conformed to its implied warranties, including, but not limited to, the implied warranty that the Defendants' products were reasonably safe for use by consumers.

117.    Defendants had a duty to design, manufacture, import, place into the stream of commerce, distribute, market, and sell the Instant Pot® so that it was neither defective nor unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed and sold.

118.    The Instant Pot® purchased from the Defendants and used by the Plaintiffs and their minor daughter was in a defective condition and unreasonably dangerous to the user or consumer at the time the Instant Pot® left the possession of the Defendants, and at the time the device entered the stream of commerce, because of, but not limited to, the followings:

a)  the Instant Pot® was not reasonably safe as intended to be used;

b)  the Instant Pot® contained design defects, including that the lid could be opened when the pot was under pressure;

c)  the Instant Pot® contained manufacturing defects, including that the lid could be opened when the pot was under pressure, which was not intended in its design and specifications;

d)  the Instant Pot® contained manufacturing defects, including that the pressure indicators indicated that the pot was not under pressure, when in fact it was under pressure, which was not intended in its design and specifications

22

e) the design of the Instant Pot® presented risks which exceeded the utility of the product;

f) the Instant Pot® was dangerous to an extent beyond which would be contemplated by the ordinary consumer, and did not meet consumer expectations;

g) the Instant Pot® did not comply with applicable UL Standards;

h) the Instant Pot® did not comply with applicable ASTM Standards;

i) the Instant Pot® did not comply with applicable ANSI Standards;

j) the Instant Pot® did not comply with applicable industry standards;

k) a reasonably prudent manufacturer, distributor, or seller, given knowledge of the Instant Pot®'s condition, would not have marketed, distributed or sold the device;

l) the Instant Pot® was not appropriately or adequately tested before its distribution or sale;

m) the Instant Pot® purchased and used by the Plaintiffs from the Defendants did not warn that the lid could be opened when the pot was under pressure, and that serious injury could result from opening under pressure;

n) the Instant Pot® purchased and used by the Plaintiffs from the Defendants did not warn that in spite of devices and indicators on the pot indicating that the pressure had been released, the pot

23

> may still be under pressure, and that serious injury could result from opening under pressure; and,
>
> o) the Instant Pot® marketing, instructions, and packaging, misrepresented its safety characteristics and the inability to open the lid when the pot was under pressure, when in fact it could be opened under pressure.

119. Had Defendants adequately tested the Instant Pot® they would have discovered:

> a) the lid could be opened when the Instant Pot® was still under pressure;
>
> b) the safety devices were inadequate to prevent the lid from being opened when the Instant Pot® was still pressurized;
>
> c) the safety devices of the Instant Pot®, at times, would indicate that there was no pressure in the Instant Pot®, when in fact there was pressure in the pot; and,
>
> d) that when the lid of the Instant Pot® was opened under pressure steam and the contents would erupt from the pot and cause severe scalding injuries to the consumer opening the Instant Pot®, and anyone near the Instant Pot®.

120. The Instant Pot® purchased by Plaintiff Mary Cooper from the Defendants was expected, and did, reach the consumer without substantial change in the condition in which it was sold.

24

121.     The defects in the Instant Pot® purchased by Plaintiff Mary Cooper from the Defendants caused the injuries to the Plaintiffs and their minor daughter, as set forth in this Amended Complaint.

122.     Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., the Amazon Defendants are deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado, and are thereby liable to the Plaintiffs for the claims asserted in this count of this Second Amended Complaint.

123.     The Plaintiffs suffered damages, as set forth in this Amended Complaint.

124.     As a direct and proximate result of the conduct of the Defendants, as set forth herein, Plaintiffs' minor daughter, C.C., suffered the injuries and damages as set forth in this Complaint.

## COUNT II

### NEGLIGENCE

125.     Plaintiffs incorporate by reference the facts and allegations set forth in the paragraphs above of this Amended Complaint.

126.     The conduct, actions, and failure to act, of the Defendants, as set forth above were negligent.

127.     In addition to the above negligence, the conduct, actions, and failure to act, of the Defendants, were negligent in that:

a) the Instant Pot® as designed allowed the lid to be opened when the pot was under pressure, when that was not the stated intent of the design;

b) the Instant Pot® as designed had devices that did not prevent the lid from being opened when the pot was under pressure, when the stated intent of the Instant Pot® design was that the lid could not be opened when the pot was under pressure;

c) the Instant Pot® as manufactured had defects that were not discovered before the product left the control of the Defendant(s), which manufacturing defects allowed the lid to be opened when the pot was under pressure, contrary to its intended design;

d) the Instant Pot® was not adequately tested in design to ensure that it would perform as intended, and that the lid could not be opened when the pot was under pressure;

e) the Instant Pot® as manufactured was not adequately tested to ensure that it would perform as represented, and that the lid could not be opened when the pot was under pressure, in spite of indication to the contrary on the product, and that serious injury could result;

f) the Instant Pot® did not comply with applicable UL Standards;

g) the Instant Pot® did not comply with applicable ASTM Standards;

h) the Instant Pot® did not comply with applicable ANSI Standards;

i) the Instant Pot® did not comply with applicable industry standards;

j) the marketing materials, instructions, and packaging misrepresented that the Instant Pot® failed to warn that the lid could be opened when the pot was under pressure; and,

k) the marketing materials, instructions, and packaging misrepresented that the Instant Pot® had safety devices that prevented the lid from being opened when the pot was under pressure, when that was not true.

128. In the exercise of reasonable care, Defendants knew or should have known that the Instant Pot® in general, and the Plaintiffs' Instant Pot® specifically, was negligently designed, negligently tested, negligently manufactured, failed to comply with applicable industry standards, contained false and misleading safety warnings and information, misrepresented its safety and safety devices and characteristics, and otherwise was defective and likely to cause serious bodily injury to consumers when being used as reasonably expected.

129. Pursuant to of the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., the Amazon Defendants are deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado, and are thereby liable to the Plaintiffs for the claims asserted in this count of this Second Amended Complaint

130.   As a direct and proximate result of the negligence of the Defendants, as set forth above, Plaintiffs' minor daughter, C.C., suffered the injuries and damages as set forth in this Amended Complaint.

## COUNT III

**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT**

**C.R.S. §6-1-101, et seq.**

131.   Plaintiffs incorporate by reference the facts and allegations as set forth in the paragraphs above of this Amended Complaint.

132.   The claims and statements made by the Defendants regarding the performance and safety features of the Instant Pot®, as set forth above, were false.

133.   The claims and statements made by the Defendants regarding the performance and safety features of the Instant Pot®, as set forth above, were deceptive trade practices, as defined in C.R.S. §6-1-105, including, but not limited to C.R.S. §6-1-105 (e), (g), and (i).

134.   Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., the Amazon Defendants are deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado and are thereby liable to the Plaintiffs for the claims asserted in this count of this Second Amended Complaint.

135.   As a direct and proximate result of the Defendants' deceptive trade practices, Plaintiffs are entitled to all of the damages and remedies provided to Colorado consumers pursuant to C.R.S. §6-1-113, including but not limited to treble damages, and

the costs of this action, together with reasonable attorney fees as determined by the Court.

## COUNT IV

## BREACH OF IMPLIED WARRANTY

136.    Plaintiffs incorporate by reference the facts and allegations as set forth in the paragraphs above of this Amended Complaint.

137.    Defendants impliedly warranted that the Instant Pot® was safe, merchantable, and free of defects that would cause injury when being used in a reasonable and expected way.

138.    Plaintiffs used the Instant Pot® for its intended purpose, and in a reasonably foreseeable manner.

139.    Plaintiffs' Instant Pot® did not conform with the implied warranty of merchantability in that it could be opened when under pressure.

140.    Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., the Amazon Defendants are deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado and are thereby liable to the Plaintiffs for the claims asserted in this count of this Second Amended Complaint.

141.    As a direct and proximate result of the breach of the implied warranty of merchantability, as set for the herein, and as set forth above, Plaintiffs' minor daughter, C.C., suffered the injuries and damages set forth in this Complaint.

## COUNT V

## BREACH OF EXPRESS WARRANTY

142.   Plaintiffs incorporate by reference the facts and allegations as set forth in the paragraphs above of this Amended Complaint.

143.   Defendants expressly warranted that the Instant Pot® lid could not be opened when under pressure.

144.   Plaintiffs' Instant Pot® did not conform with the express warranty in that the lid could be opened when under pressure.

145.   Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., the Amazon Defendants are deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado, and are thereby liable to the Plaintiffs for the claims asserted in this count of this Second Amended Complaint.

146.   As a direct and proximate result of the breach of the express warranty of merchantability, as set forth herein, and as set forth above, Plaintiffs' minor daughter, C.C., suffered the injuries and damages set forth in this Amended Complaint.

## COUNT VI

## WANTON AND RECKLESS CONDUCT

147.   Plaintiffs incorporate by reference the factual background as set forth in the paragraphs above of this Amended Complaint.

148.   The acts and conduct of Defendants, set forth above, were attended by circumstances of malice, or willful and wanton conduct, and/or in reckless disregard of

the consequences from which malice may be inferred and showed a total disregard for human life and human suffering.  This conduct included, but was not limited to:

    a)  putting on the market for distribution and sale a pressure cooker that claimed in its instructions the lid could not be opened when under pressure, when in fact it could, and these Defendants knew that it could;

    b)  designing, manufacturing, exporting, importing, distributing, marketing and selling a pressure cooker that claimed in its marketing materials the lid could not be opened when under pressure, when in fact it could, and these Defendants knew that it could;

    c)  designing, manufacturing, exporting, importing, distributing, marketing and selling a pressure cooker that claimed on its box the lid could not be opened when under pressure, when in fact it could; and these Defendants knew that it could;

    d)  manufacturing, exporting, importing, distributing, marketing and selling a pressure cooker that claimed the lid could not be opened when under pressure, when in fact testing had proven that statement was in fact not true;

    e)  manufacturing, exporting, importing, distributing, marketing and selling a pressure cooker that claimed the lid could not be opened

when under pressure, when in fact was not designed with devices that prevented the lid from being opened; and,

f)  continuing to manufacture, export, import, distribute, market, and sell a pressure cooker that claimed the lid could not be opened when under pressure, when it had notice from consumers of injury having been caused by the lid having been opened when under pressure.

149.   The willful and wanton conduct of Defendants was conduct purposefully committed which Defendants must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Plaintiffs and their minor daughter.

150.   To this day the Defendants have continued their conduct and behavior, as set forth in this civil action, in a willful and wanton manner, against other persons who have these defective Instant Pots®.

151.   Pursuant to the provisions of the Colorado Product Liability Act, C.R.S. §13-21-401, et. seq., the Amazon Defendants are deemed to be the "manufacturer" of products that they distributed, and that were used by citizens of the State of Colorado in the State of Colorado, and are thereby liable to the Plaintiffs for the claims asserted in this count of this Second Amended Complaint.

## DAMAGES FOR ALL CAUSES OF ACTION

152.   Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and for their damages for each cause of action further allege as follows:

153.   As a direct and proximate result of the failure of the Defendants' Instant Pot® and the conduct, actions, inactions and omissions of Defendants, Plaintiffs Matthew Cooper and Mary Cooper, individually, and as guardians and next friends of their minor daughter C.C., have sustained injuries and damages, including, but not limited to:

a)  serious and permanent burns and physical injuries to C.C.;

b)  past and future pain, suffering, and anguish, both in mind and in body suffered by C.C.;

c)  physical disability, past and future, suffered by C.C.;

d)  physical impairment suffered by C.C.;

e)  disfigurement suffered by C.C.;

f)  loss of enjoyment of life, suffered by C.C.;

g)  past medical bills associated with the care and treatment of C.C.;

h)  future medical bills and expenses to be incurred by Plaintiffs during the remainder of the minority and dependency of C.C.;

i)  future medical bills and expenses to be incurred by C.C. after she becomes an adult;

j)  such other damages as may be allowed by Colorado law, and supported by the evidence; and,

k)  attorneys' fees and the costs and expenses of litigation as may

be permitted by Colorado law and the rules of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Cooper and Plaintiff Mary Cooper, individually, and as guardians and next friends of their minor daughter, C.C., each demand judgment against Defendant Instant Brands, Inc., Defendant Guangdong Midea Consumer Electric Manufacturing Co Ltd., Defendants Amazon.com, Inc., Amazon.com LLC, Amazon Services LLC, Amazon Services Colorado LLC, and Amazon.com Services, Inc., jointly and severally, in an amount to be determined by a jury, prejudgment interest, post-judgment interest, and taxable cost, along with any and all other relief available under the law to fully compensate them for their injuries and damages.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Respectfully submitted this 5th day of April 2019.

*/s/ George E. McLaughlin*
George E. McLaughlin, #16364
Warshauer McLaughlin Law Group, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
720-420-9800
gem@w-mlawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2019, a true and correct copy of the foregoing **(CORRECTED) SECOND AMENDED COMPLAINT AND JURY DEMAND** was served as follows:

Mark R. Davis
Jachimiak Peterson
1819 Denver West Drive, Suite 265
Golden, CO 80401
mdavis@jpfirm.law
*Attorneys for Defendant*

☐ By Email
☐ By Facsimile Transmission
☐ By Overnight Delivery
☑ By CM/ECF System
☐ By First-Class U.S.

Dennis R. Callahan
Ward Greenberg Heller & Reidy LLP
1835 Market Street, Suite 650
Philadelphia, PA 19103
dcallahan@wardgreenberg.com
*Attorneys for Defendant*

☐ By Email
☐ By Facsimile Transmission
☐ By Overnight Delivery
☑ By CM/ECF System
☐ By First-Class U.S.

*s/ Ellen Larson*
Ellen Larson