## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02611-MSK-STV

MATTHEW COOPER and
MARY COOPER, jointly as the Guardians
and next friends of C.C.,

       Plaintiffs,

v.

INSTANT BRANDS INC.,
f/k/a DOUBLE INSIGHT INC.,
d/b/a INSTANT POT COMPANY,
GUANGDONG MIDEA CONSUMER
ELECTRIC MANUFACTURING CO LTD.,
AMAZON.COM, INC.,
AMAZON.COM LLC,
AMAZON SERVICES LLC,
AMAZON SERVICES COLORADO LLC, and,
AMAZON.COM SERVICES, INC.,

       Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFFS' MOTION TO COMPEL

---

       Plaintiffs, pursuant to Fed. R. Civ. P. 37, have moved this Court to overrule certain objections Defendant Instant Brands Inc. ("Instant Brands") has asserted in opposition to various written discovery requests previously served by the Plaintiffs, to enter an Order to compel Instant Brands to produce certain documents sought in Request for Production No. 6, and to fully answer Interrogatory No. 20.  This Memorandum is respectfully filed in support of Plaintiffs' Motion.

### HISTORY AND STATUS OF THIS DISCOVERY DISPUTE

       On November 28, 2019, Defendant Instant Brands Inc. served its Initial Disclosures pursuant to Rule 26(a)(1).  Little substantive information was disclosed in those Initial Disclosures.

[Exhibit A]  The next day, November 29, 2019, Plaintiffs first served Written Discovery Requests to Defendant Instant Brands Inc. – Set No. 1.  That written discovery consisted of six Requests for Production, including a Request for the documents and things identified by Defendant in its Rule 26(a)(1) disclosures, three Interrogatories, and six Requests for Admission.

After requesting an additional month to respond to this discovery, on January 25, 2019 Defendant Instant Brands served its answers and responses to Plaintiffs' Written Discovery – Set No. 1. [Exhibit B]  The answers and responses were prefaced with numerous "General Objections". These General Objections were mostly non-specific boilerplate objections, including objections such as attorney-client privilege, work product, not limited in time and scope, overly broad, unduly burdensome, and the like.  Many of these "General Objections" were repeated in response to specific discovery requests.

Instant Brands claimed in its answers and responses to Plaintiffs' Written Discovery – Set No. 1. that it did not design or manufacture the product in issue.[1]  However, the subject product in issue, the label on that product, and its User Manual, only bear the name and address of "Instant Pot Company."  [Exhibits C, D and E]  "Instant Pot Company" is a name under which Instant Brands Inc. does business.  Even though its User Manual states, "Instant Pot has been designed to avoid the common errors and safety hazards of old stove-top pressure cookers using 10 proven safety mechanisms and patented technologies."[2]  In response to a Request for those patents, Instant Brands stated that it does not own any of the patents applicable to the product, and did not produce any documents in response.[3]  However, from the discovery that has been produced in this case it

---

[1]   Exhibit B, Response to Requests No. 1, 2, and Interrogatory 1.
[2]   Exhibit E, User Manual, pg. 5.
[3]   Exhibit B, Response to Request No. 5.

does appear that Instant Brands does receive and handle claims that an Instant Pot product has malfunctioned and injured a consumer.

A "General Objection" asserted by Instant Brands to all of the discovery requests is:

Instant Brands generally objects to these Requests to the extent they seek information regarding pressure cookers other than the IP-DUO60 V2 model pressure cooker, which is the only model at issue in this case. Instant Brands' responses will therefore be directed solely to the IP-DUO60 V2 model pressure cooker.

[Exhibit B. General Objection 2] Similar objections have been reasserted in response to various specific discovery requests. "Instant Brands further objects to this Request to the extent it seeks documents relating to pressure cookers other than the Model IP-DUO60 V2 at issue in this case," or "Instant Brands objects to this Request [Interrogatory] on the grounds that it . . . seeks information regarding the design or products other than the product at issue in this action. . . ." To date, such objections have been asserted in response to eighteen individual discovery requests.[4]

Plaintiffs have sparingly used the written discovery requests allowed by the rules and the Scheduling Order of this Court. [Doc. 18] Some of the sets of written discovery served by Plaintiffs have contained as few as one or two discovery requests.[5] To date the Plaintiffs have not used all of the allowed written discovery requests.

Because of the Civil Practice Standards of this Court related to discovery disputes, Plaintiffs' counsel has also been judicious in what he has chosen to bring to the Court for resolution. Prior to requesting the first discovery hearing, Plaintiffs' counsel wrote a detailed letter to defense counsel in an effort to resolve the numerous discovery disputes that existed as of the

---

[4]   This objection has been asserted in response to seven of the fourteen Requests for Production that have been responded to by Instant Brands to date, Requests Nos. 3, 6, 7, 8, 9, 10, 11, and asserted in response to eleven of the twenty Interrogatories answered by Instant Brands to date, Interrogatories 2, 7, 8, 9, 10, 11, 12, 16, 17, 19, and 20.

[5]   Plaintiffs' Written Discovery Requests – Set. No. 2 contained one Request for Production and one Interrogatory. Plaintiffs' Written Discovery Requests – Set. No. 5 contained one Interrogatory.

receipt of Instant Brands' Rule 26(a)(1) Initial Disclosures, and its objections, responses and answers to the Plaintiffs Written Discovery Requests – Set. No. 1.  [Exhibit F].  There also were telephone conversations between counsel for these parties discussing the discovery disputes both before and after that letter.  However, it was not until April 3 that Defendant's counsel was ready and available to discuss these issues on the phone with Plaintiffs' counsel.  Another three weeks passed until defense counsel stated his client's position in writing by letter dated April 26, 2019 [Exhibit G].  The net result of those efforts was that no objections were withdrawn, and no supplemental answers or responses were served. [6]

After receipt of the April 26 letter Plaintiffs' counsel immediately proceeded to make use of this Court's practice standards to request a discovery hearing.  On April 30, 2019, a hearing was set to take place on May 14, 2019.  [Doc. 39]  That hearing became focused on the limited issue of the production of documents related to reports that an Instant Pot® product was able to be opened while the contents were under pressure, produced in response to Plaintiffs' Request for Production No. 6.  The text of that Request is:

> 6.  For each notice or communication you have received from consumers, retailers, or a governmental agency such as the Health Canada, the U.S. Consumer Product Safety Commission, and the like, reporting that an Instant Pot® product allegedly was able to be opened while the contents were under pressure, produce a copy of all communications and documents related to that reported claim or incident, including all internal and external communications related to that claim or incident, including but not limited to your claim file for that incident.

The Defendant's objection and response is:

> RESPONSE:  Instant Brands objects to this Request as overly broad and unduly burdensome, in that it seeks information relating to products other than the Model IP- DUO60 V2 at issue in this litigation, seeks information relating to time periods not at issue in this litigation, and seeking information regarding incidents that are not substantially similar to the incident described in plaintiffs' Amended Complaint.

---

[6]   The Letter of April 26, 2109 was followed by two additional short letters dated April 29 and 30, 2019.  The April 30 letter included the production of a full copy of the insurance agreement as required pursuant to Rule 26(a)(1)(A)(iv), the production of which had been a subject of dispute.

Further, this Request would require the disclosure of personal information of those communicating with Instant Brands.  Without waiving these objections, see document produced, which constitute all documents in the possession of Instant Brands relating to incidents occurring prior to September 27, 2017 reporting that an IP-DUO 60 V2 allegedly was able to be opened while the contents were under pressure. Reports provided to Health Canada are marked CONFIDENTIAL.[7]

A result of the May 14, 2019 discovery hearing was that the Court ruled that discovery would not be limited to only the IP-DUO 60 V2 product.  The Court's Order states, in part:

The Defendants shall produce documents that have the same or substantially similar lids as the one involved in this matter where they had to make a Health Canada Report in response to an allegation of the lid malfunctioning in a way similar to what occurred in this matter.  The time frame for these documents shall be from September 2015 to now.

Doc. 47 [in part].

The Defendant then sought "clarification" from the Court, seeking to limit the production of documents to *only* the Health Canada Reports.  Such a limitation had not been discussed at the May 14, hearing, and was not what the Court had ordered.  On Thursday, May 16, Defendant contacted the Court by letter, sent by email, without first contacting Plaintiffs' counsel to discuss this issue or inform him of the Defendant's intention to unilaterally contact the Court.  Before Plaintiffs' counsel learned that the Defendant had contacted the Court, the Court entered an Order limiting the discovery to only the Health Canada Reports.  [Doc. 48]

Plaintiffs' counsel immediately contacted the Court by letter, sent by email, objecting to the unilateral contact of the Court by counsel for Instant Brands, and the action taken by the Court without hearing the Plaintiffs' position.  An email response sent that same day from the Court at 3:28 p.m. advised the parties:

---

[7]   The April 26, 2019 letter included a commitment that Instant Brands' discovery responses would be supplemented to include other similar incidents involving the DUO60 V1 incidents occurring before September 27, 2017, the date of the Cooper incident.  However, to date no such supplementation has been produced.

Pursuant to Magistrate Judge Varholak's Civil Practice Standards, to the extent the parties have ongoing disputes with respect to the 5/14/2019 Discovery Hearing, the parties are required to meet and confer, in person or over the phone, in an attempt to resolve these disputes. If, after conferring, the parties are unable to resolve the issues, counsel must follow Judge Varholak's informal discovery procedures, and jointly call chambers to schedule another discovery hearing at and was directed to follow the Civil Practice Standards of this Court to request a hearing.

That was done. By Minute Order entered on May 21, 2019 a hearing was set and held two days later, May 23, 2019 [Doc. 49].

By agreement of the parties, the issue of the Instant Brands' objection to the discovery of the identity of the persons who had claimed to have had an incident similar to that of the Plaintiffs was added to the issues for the May 23, 2019 discovery hearing. That dispute had just arisen on May 10, 2019, with service of Instant Brands' objection in answer to Plaintiffs' Interrogatory No. 20. [Exhibit H]

As oral presentation of the issues evolved at the May 23 hearing, the Court directed that these issues be briefed and a formal Motion to Compel be filed.

By May 31, 2019, Plaintiff shall file a Motion to Compel detailing what is being sought on both of the discovery disputes before the court today. The parties, in their motion and in their response, shall address the law as cited by the court in *United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404.

[Doc. 50]

## ARGUMENT

**Similarity among various models of the Instant Pot.**

The Court directly requested that the parties address *United Oil Co., Inc. v. Parts Associates, Inc.* 227 F.R.D. 404 (D. Md. 2005) in their briefings. This Court held in its May 14, 2019 ruling that discovery here would not be limited to only incidents involving the IP-DUO 60 V2 product.

The Defendants shall produce documents that have the same or substantially similar lids as the one involved in this matter where they had to make a Health Canada Report in response to an allegation of the lid malfunctioning in a way similar to what occurred in this matter. The time frame for these documents shall be from September 2015 to now.

[Doc. 47 Minute Entry, in part.] It appears that the opinion in *United Oil* supports the Plaintiffs' position here regarding the discoverability of other similar incidents.

The primary issue in the instant *Cooper* case is the claim that the lid of the Plaintiffs' subject Instant Pot pressure cooker was able to be opened while the contents were still under pressure, and thereby caused injury to the Plaintiffs' nine-year-old daughter. Allegations in the Plaintiffs' Second Amended Complaint [Doc. 36] include:

65. On September 27, 2017, Plaintiff Mary Cooper, and her then nine-year-old daughter, C.C., were cooking food in their home in Douglas County, Colorado, using the Instant Pot® that had been purchased by Plaintiff Mary Cooper.

. . .

70. After waiting an appropriate time, the lid handle was then moved to disengage so that the lid could be opened. As the movement to disengage the lid was occurring, the lid blew off, releasing with sudden and great force the steam and pressure that was still contained within the Instant Pot®, and spewing its scalding contents onto the face, shoulder, arm, chest and torso of C.C.

71. As a direct and proximate result of the above described sudden release of pressure, and discharge of the scalding contents of the Instant Pot®, C.C. sustained serious, painful, disfiguring, and permanent scalding burn injuries to her shoulder, arm, chest and torso, and other injuries and damages as set forth in this Amended Complaint.

. . .

73. The Instant Pot® was manufactured with the specification that lid cannot be opened while contents of the pot were under pressure.

. . .

94. The Instant Pot® in general, and the Instant Pot® purchased by the Plaintiff specifically, was not merchantable, and was unreasonably dangerous for its intended and/or reasonably foreseeable uses in that it was and is unreasonably

dangerous under Colorado product liability law as a result of one or more, or a combination, of the following:

1) the Instant Pot® was designed in such a way that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened;

2) the Instant Pot® was manufactured in such a way that the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when the lid was opened;

. . .

8) the Instant Pot® User Manual stated, "As a safety feature, until the float valve drops down, the lid is locked and cannot be opened," when that in fact was not true.

. . .

97.   Prior to July 12, 2016, the Defendants had received notice that in some of the Instant Pot® products that had been sold, the lid could be opened while still under pressure, causing scalding hot contents to erupt from the pot when opened.

118.  The Instant Pot® purchased from the Defendants and used by the Plaintiffs and their minor daughter was in a defective condition and unreasonably dangerous to the user or consumer at the time the Instant Pot® left the possession of the Defendants, and at the time the device entered the stream of commerce, because of, but not limited to, the followings:

a) the Instant Pot® was not reasonably safe as intended to be used;

b) the Instant Pot® contained design defects, including that the lid could be opened when the pot was under pressure;

c) the Instant Pot® contained manufacturing defects, including that the lid could be opened when the pot was under pressure, which was not intended in its design and specifications;

. . .

m) the Instant Pot® purchased and used by the Plaintiffs from the Defendants did not warn that the lid could be opened when the pot was under pressure, and that serious injury could result from opening under pressure;

[Doc. 36]

The lid of the Instant Pot product opening while the contents are under pressure is the central issue in this case. Plaintiffs allege not only that the Defendant did not warn of this issue, but that, by design, it should not have happened. The Defendant made affirmative statements that the product could not be opened under pressure. Discovery of the number and timing of other similar incidents is relevant for both proof of notice, and proof of defect.

The *United Oil* court had a similar issue before it. Plaintiff United Oil sought discovery of other incidents where the defendants were put on notice of injuries caused to people by the chemicals in products the defendants manufactured and distributed. In discussing the issue of substantial similarity, the *United Oil* court stated:

> Courts have allowed plaintiffs to introduce evidence of substantially similar occurrences or lawsuits on the issue of notice and causation. 3 Frumer & Friedman, *Products Liability* § 18.02[1][b]-[g] (2004); 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[1][a] (3d ed.2004). ("[O]ther incidents similar to, or involving the same product as, the incident in the lawsuit ... may be relevant to the claims and defenses under certain circumstances.)" Accordingly, there appears to be little dispute that R & H's notice of claims, complaints or lawsuits regarding the dyes, or products "substantially similar" to the dyes would be admissible on the notice and causation elements of the failure to warn claim.

*United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404, at 410.

Here, it appears that all of the Instant Pot pressure cooker products have a common design feature and function, a lid locking mechanism that is *intended* to prevent the lid from being opened if there is pressure in the cooking chamber. Instant Pot's claim of this safety feature is not limited to the IP-DUO 60. This claim, that the lid cannot be opened under pressure, appears on the Instant Pot website pages produced in discovery, and exists on its website to this day. ["If the cooker is still pressurized, the lid will be locked to prevent accidental opening," [Exhibit I, CvIP-00267; and Exhibit J] The User Manual that accompanied Plaintiffs' purchase [Exhibit E] lists seven different models of Instant Pot pressure cooker products that are covered by the same manual, the

IP-DUO80, IP-DUO60, IP-DUO50, IP-DUO60 V2, IP-DUO50 V2, IP-DUO60-ENW, and the IP-DUO50-ENW.   The information, instructions, and claims therein are for all seven Instant Pot pressure cooker models in the manual.

As discussed in *United Oil*,

"[S]ome courts have permitted discovery of other litigation where it involves (1) the same or similar claims arising from (2) the same or similar products at issue." (Paper No. 86 at 4).   Indeed, that is the widely-accepted view.   "[D]iscovery of similar, if not identical, models is routinely permitted in product liability cases." *Culligan v. Yamaha Motor Corp.*, 110 F.R.D. 122, 126 (S.D.N.Y.1986). "[Discovery] of other accidents involving similar products is relevant in products liability cases to show notice to defendants of the danger and cause of the accident." *In re Aircrash Disaster Near Roselawn, Ind.*, Oct., 31.1994, 172 F.R.D. 295, 306 (N.D.Ill.1997). *Accord Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir.1988); *Gardner v. Q.H.S.*, 448 F.2d 238, 244 (4th Cir.1971).   Moreover, courts have allowed discovery of information regarding the same component part in a different product in a number of product defect cases.   See, e.g., *Fine v. Facet Aerospace Products Co.*, 133 F.R.D. 439, 441 (S.D.N.Y.1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."); *Schaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 387 (N.D.Ill.1990) (holding information concerning similar models that have the same component parts to be discoverable); *Bowman v. General Motors Corp.*, 64 F.R.D. 62, 70-71 (E.D.Pa.1974) (allowing discovery of information about subsequent vehicle model with similar fuel system); *Uitts v. General Motors Corp.*, 58 F.R.D. 450, 451 (E.D.Pa.1972) (allowing discovery of all information relating to similar accidents in vehicles manufactured by defendant with a spring identical to the one at issue).

*United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404, at 410.

Unlike the distinctions that existed among the various chemicals and concentrations in the products in issue in *United Oil*, and the various injuries that different chemicals may cause, here, it is the "lid lock assembly", the operable mechanism within the lid, that is in issue.   This feature is not only substantially similar, but identical, in many different models of Instant Pot pressure cooker products.   If a consumer needs to replace the lid for their DOU60, a replacement lid is available on-line directly from Instant Pot.   [Exhibit K]   As shown in Exhibit K, the lid for the DUO60 products is the identical lid used for a replacement of the lid on at least eleven different

models of Instant Pot, the DUO50 [V1, V2, and ENW], DUO60 [V1, V2, and ENW], DUO Plus 60, Nova Plus 60, Smart Bluetooth, Smart WiFi, and Viva 60.  The size of the pot, a 5 quart [DUO 50] or a 6 quart [DUO 60] is irrelevant to the safety lid lock feature.  Electronic programming features, among the various models, the Plus, Nova, Smart Blue Tooth, Smart WiFi, and Viva, are irrelevant.  The lid, which contains the lid lock assembly, is identical.

These Instant Pot products are UL listed, File E214884.  Underwriters Laboratories [UL] documents produced in discovery by Instant Brands [Exhibit L, CvIB-00035 – 00085] show that the "Cover Opening" and the "Locking Mechanism Operation" demonstrated for UL certification, is identical among eighteen Models, the IP-DUO50, IP-DUO50 V2, IP-DUO50-ENW, Smart-50, IP-DUO60, IP-DUO60 V2, IP-DUO60 V2.1, IP-DUO60 V3, IPDUO60-ENW, DUO Plus 60, Smart-60, Ultra 60, MY-13CS501W, MY-13CS601W, MY-CS6017WP, MY-CS6014WP, Viva, and Nova.  *Id.*

Defendant wants to limit discovery to a single model number of the product and preclude Plaintiffs access to other "models" of this product which share not only a similar, but the exact same design, UL Listing, defect, and mode of failure.  "In the context of discovery, 'different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in litigation.' [internal citations omitted]  Indeed, 'discovery of similar, if not identical, models is routinely permitted in product liability cases" [internal citations omitted]  *Cohalan v. Genie Indust., Inc.,* 276 FRD 161, 164  (SDNY 2011).

It now is known, from recent discovery of confidential documents, ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████  While these documents are written in Chinese, █████████████████████

 [Exhibit M]  The design drawings and specification document

███████ [Exhibit N] ████████████████████████

███████████ [Exhibit N]

The Court in *United Oil* held:

United Oil is entitled to discovery of those products containing the same injury-causing chemical compounds exposure to which United Oil asserts resulted in Mr. Tiede's liver damage.  See *Fine v. Facet Aerospace Prod. Co.,* 133 F.R.D. 439, 441 (S.D.N.Y.1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation.")

*United Oil Co., Inc. v. Parts Associates, Inc.*, 227 F.R.D. 404, at 413.  Here, each of the Instant Pot pressure cooker products have the same injury-causing defect, and ineffective lid lock feature.

It now appears that Instant Pot ████████████████████████

███████████████████████████████████████

Even though products may be identified as various "models", because they are a different size, have some different electronic programming features, or have some other difference meriting a different model number, they "share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."  *United Oil* at 413.

**Documents Sought**

In response to discovery requests Defendant Instant Pot has disclosed sixteen other similar incidents where consumers contended that their Instant Pot opened while the contents were under pressure.  The produced documents, which appear to be what are commonly called "claim files", are Bate Stamped CvIP-00288 through CvIP-01110.  Each claim file is identified as a "customer", i.e., Customer #1, Customer #2, Customer #3, etc.  The customer names and other identifying information, such as addresses, email addresses, and phone numbers have been redacted.

Each of these claim files have what is called a "ticket". The best way for the Court to understand what is in these claim files, and in a "ticket" is for relevant pages of a few of them to be produced as exhibits here. Attached hereto as Exhibits O, P, Q, R, and S are relevant pages that are portions of claim files for customers #10, #12, #13, #14, and #15, respectively.

The Requests for Production that are in dispute are not limited to the Heath Canada Consumer Product Incident Reports. Health Canada Incident Reports are included in some, but not all, of the sixteen sets of claim file documents that were produced in discovery by Instant Brands. The documents produced were not limited to only Heath Canada Reports.

In some of the produced claim files, there was no corresponding Health Canada Report. However, Instant Pot creates what it calls a "Ticket", for every reported incident of a lid opening under pressure. Every produced claim file contained such a "Ticket". Many of the produced claim files contained other relevant documents such as correspondence, and photographs of the product and the injuries caused, all of which appear to be referenced in and a part of the "Ticket." If the original production of documents had been limited to only those events reported to Health Canada, Plaintiffs would not have learned of the lid opening under pressure disclosed in the documents produced for Customers #12, #14, and #15, for which there were no Health Canada Reports.

Furthermore, the Heath Canada Reports are prepared and submitted within 10 days of the company receiving notice of an incident. At that time little may be known about the incident. For example, the Health Canada documents produced for Customer #13 [Exhibit Q.2] do not state anywhere within the report the model of the product, nor the date code revealing when the product was manufactured. However, the "Ticket" for Customer #13 [Exhibit Q.1] states both the model, DUO60-V2, and the date code, 1605.

If production of the documents for Customer #13 had been limited to only the Health Canada Reports, Plaintiffs would not have discovered that Customer #13's Instant Pot was the exact same model as the subject Cooper product, and was manufactured in May of 2016, the same year and month as the subject Cooper product. Having the model and date code for the product that malfunctioned allows Plaintiffs to focus on exactly when the defect in these products arose, and for how long it existed.

Plaintiffs here are seeking the full claim files. It appears that the Health Canada reports alone are of little value for discovery purposes. However, to the extent that they are a part of a claim file they should also be produced.

## Identity of Victims of Other Similar Incidents

The second subject of this Motion to Compel is the discovery of the identifying information of persons who were the victims of other similar incidents, sought in Interrogatory No. 20. In Interrogatory No. 20., Plaintiffs requested:

> Identify, including the name, address, telephone number, and email address, each and all persons known to Defendant Instant Brands who claim to have received a burn injury from any product called an "Instant Pot" where the burn is claimed to have been caused by the lid of the product opening while its contents were under pressure.

The Defendant responded:

> ANSWER: Instant Brands objects to this Interrogatory as overly broad and unduly burdensome, in that it seeks information relating to products other than the Model IP-DUO60 V2 at issue in this litigation, seeks information relating to time periods not at issue in this litigation, and seeking information regarding incidents that are not substantially similar to the incident described in plaintiffs' Amended Complaint. To the contrary, plaintiff explicitly seeks information relating to other incidents (lid opened while "contents were under pressure") that are fundamentally dissimilar from the allegations in plaintiffs' pleadings (lid was opened after the float valve dropped, steam stopped venting, and time passed, see (Corrected) Second Amended Complaint, paragraphs 68 – 70) that demonstrate there was no pressure within the unit when opened. Further, this Interrogatory seeks the personal information of non-parties with no relationship to the occurrence alleged in

plaintiffs' Complaint.  As such, the burden to Instant Brands and others is  not proportional to plaintiffs' needs in this action.  Without waiving these objections, see response to Request 6 (Written Discovery Requests – Set 1).

[Exhibit H]

The statement, "Without waiving these objections, see response to Request 6 (Written Discovery Requests – Set 1)" refers back to the claim file documents produced for Customer #1 through Customer #16, discussed above.  In those produced documents the identifying information of each claimant has been redacted.  [E.g., see the first page of Exhibits O.1, P.1, Q.1, R, and S. Instant Brands did not provide the identity of these customers who experienced other similar incidents.  Plaintiffs are entitled to the identity of these individuals.

> Both federal and state courts routinely permit introduction of substantially similar acts or occurrences in product liability actions to demonstrate the existence of a defect, to prove notice, or to refute testimony given by defense witnesses.  *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1560 (10th Cir.1987); *Rexrode v. American Laundry Press Co.*, 674 F.2d 826, 829 n. 9 (10th Cir.), cert. den., 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982); *Jacobs v. Commonwealth Highland Theaters, Inc.*, 738 P.2d 6 (Colo.App.1986).  In a product liability action, the occurrence of similar accidents or failures involving the same product holds great relevance, since evidence of such failures tends to make the existence of a defect more probable than it would be without the evidence.  See Fed.R.Evid. 401; *Rhodes v. Michelin Tire Corp.*, 542 F.Supp. 60, 62 (E.D.Ky.1982).

*C.A. Associates v. Dow Chemical Co.*, 918 F.2d 1485, 1489 (10th Cir. 1990).  Evidence of other similar incidents may be admissible at trial to prove existence of a dangerous condition, notice or awareness of a potential defect, or both.  *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992)  [See also *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2004); and, *Adams v. Toyota Motor Corp.*, 867 F.3d 903 (8th Cir. 2017)]  "[T]he party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case."  *Id.*

The people making claims of injury from this product have no statutory or common law right to have their identity withheld in discovery. Their identity was voluntarily provided by the customer to Defendant Instant Brands. Plaintiffs are entitled to that information, so that they may contact these people, and take their depositions for use at trial in support of the Plaintiffs' position that the Cooper event described in the Complaint is substantially similar to other incidents.

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible". *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545 (11th Cir. 1985). Even with the December 1, 2015, "proportional to the needs of the case", amendment to Rule 26, "Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Bard*, 317 F.R.D. 562, at 566 (2016). More than seventy years ago the Supreme Court stated, "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507; 67 S. Ct. 385, 392; 91 L. Ed. 451 (1947).

**Plaintiffs' Requests are not overly broad nor unduly burdensome, and are proportional.**

Instant Brands' claims that Plaintiffs' demands are overly broad and unduly burdensome are without merit. The Instant Pot products at issue did not come onto the market until December 2, 2013 [See Section 6 of each Health Canada Report, Exhibits O.2, P.2 and Q.2] By default these Requests seek no more than 5½ years of information from introduction to market to date. This is a reasonable scope of time. It allows Plaintiffs and their experts to discover when Instant Brands first received notice, and the volume and extent of its knowledge about the lid opening under pressure defect in its products, both prior to and after the sale of this product to the Cooper family. [*See*, *In re Fosamax Prod. Liab. Lit.*, 2008 WL 2345877 (SDNY 2008) (rejecting defendant's 5 year restriction and ordering production of documents from 1995 until present); and *Slabaugh v.*

*LG Elecs. USA, Inc.,* 2015 US Dist. LEXIS 11562 (S.D. Ind. 2015) (ordering production of documents from 2001 to 2015 in product liability action).]

> All parties are entitled reasonable access to "all evidence bearing on the controversy between them, including that in control of adverse parties. This, of course, requires the absolute honesty of each party in answering discovery requests and complying with discovery orders." *Litton Systems, Inc. v. American Tel. & Tel. Co.*, 91 F.R.D. 574, 576 (S.D.N.Y.1981). Complete and accurate responses to discovery are required for the proper functioning of our system of justice. *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1201 (3d Cir.1989) The parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery, *Dollar v. Long Manufacturing N.C., Inc.*, 561 F.2d 613, 616 (5th Cir.1977), and their attorneys have a continuing duty to advise their clients of their duty to make honest, complete, non-evasive discovery disclosures, as well as the spectrum of sanctions they face for violating that duty. Fed.R.Civ.Pr. 26(g). Providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to sanctions. *Hogue v. Fruehauf Corp.*, 151 F.R.D. 635, 637 (N.D.Ill.1993).

*Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 609-610 (D. Neb. 2001).

The party objecting to discovery must do more than simply assert that the information sought is overly broad and unduly burdensome.

> [A]n objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa.1980) It is not sufficient to simply state that the discovery is overly broad and burdensome, nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing "huge volumes of documents and information" a sufficient factual basis for sustaining the objection. *Id.*

*Wagner v. Dryvit Systems, Inc,* supra, at 610. In assessing a claim that disclosure would be burdensome [i.e., disproportional], a trial court considers the needs of the case, the amount in controversy, the parties' resources, the importance of the issues and the importance of the discovery in resolving the issues. [See: *Trask v. Olin Corp.,* 298 F.R.D. 244, at 258 (W.D. PA. 2014)]. However, even a significant requirement of time and expense does not exempt a party from its discovery obligations.

> [T]he fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information. *Caruso v. Coleman Corp.*, 157 F.R.D. 344, 349 (E.D.Pa.1994); *Baine v. General Motors Corp.*, 141 F.R.D. 328, 331 (M.D.Ala.1991); *Snowden v. Connaught Laboratories, Inc.*, 137 F.R.D. 325, 332-33 (D.Kan.1991); *Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101, 105 (S.D.Ohio 1982); *Baxter Travenol Labs. Inc. v. LeMay*, 93 F.R.D. 379, 383 (S.D.Ohio 1981); *Dunn v. Midwestern Indemnity,* 88 F.R.D. 191, 197-98 (S.D.Ohio 1980); *Kozlowski v. Sears, Roebuck*, 73 F.R.D. 73 (D.Mass.1976).

*Wagner v. Dryvit Systems, Inc*., supra, at 611.

Here, Defendant Instant Brands operates from one location, Ottawa, Canada.  It has centralized its handling of claims.  It appears from the other prior litigation and settled claims that it uses national defense counsel for handling serious injury claims related to this product.

It has been disclosed in discovery that "Instant Brands is being defended pursuant to an indemnity agreement with the manufacturer, Guangdong Midea Consumer Electric Manufacturing Co Ltd.,[Media] a Chinese entity".  [Exhibit A, pg. 3 ¶4, Exhibit B; Answer to Interrogatory No. 1; and Exhibit T]  Midea is here named as a defendant.  Midea has not waived service of process, and it appears that it is not subject to the jurisdiction of this Court.  However, with an indemnity agreement and liability insurance policy provided to Instant Brands by Midea, it appears that the cost of defense to Instant Brands in this case will be a net $0.  Furthermore, it was recently announced in the financial media that Instant Brands is merging with Cornell Capital, LTD, in a deal that will create kitchen-products company with a market value of $2 billion.  [Exhibit U]

On the other side of this case is Plaintiffs' now eleven-year-old daughter, C.C., who was seriously burned, receiving second degree burns to her face, shoulders, arms and chest.  [Exhibits V, W, and X]  She has permanent scaring.  She has permanent disfiguring injures.  She will need plastic surgery later in life, if she wants to mitigate the embarrassing appearance of some of the scars.  She will have permanent pigmentation changes in the areas where she was most severely

burned, which cannot be reversed by any future surgery.  She will need to protect the burned areas of her body from exposure to the sun for the rest of her life.  C.C. will be at an increased risk of skin cancer for the rest of her life.

The Court should consider all of these facts in balancing the equities of proportionality for discovery in this case.  On the defense side there is coordination by the defense of other similar claims; a singular corporate location; a team of defense counsel; indemnification by the Chinese manufacturer, who is unreachable by the Plaintiffs in this litigation; its massive corporate wealth; a very limited time frame for which discovery is sought, 5½ years; a limited number of other similar incident reports; and what appears to be a coordinated system for tracking and handling of claims.  Defendant has significant resources and has exclusive access to this relevant discoverable information.  Plaintiffs do not.

On the Plaintiffs' side of the balance is serious, permanent, disfiguring injuries to the face and body of a nine year old little girl; injuries that were extremely painful when sustained, and continued to be so for many weeks, while the burn debridement treatment and healing process continued; the medical bills to date are not large, but there will be future plastic surgery; C.C. must avoid sun exposure for the rest of her life, and will have an increased risk of skin cancer.

Any alleged burdens of discovery on the Defendant Instant Brands are relatively insignificant.

**<u>Conclusion</u>**

Defendant Instant Brands has aggressively resisted most of the discovery sought by Plaintiffs in this case.  It is effectively running out the clock on the Plaintiffs' ability to conduct discovery.  At the time of the hearing on this Motion, set for June 27, 2019, it will be seven months

since Plaintiffs first served their Written Discovery – Set No. 1.  Yet much of the information sought in those requests has still not been produced.

Plaintiffs pray that this Motion to Compel be granted; that the Defendant's objection to the production of documents in response to Plaintiffs Request for Production No. 6, on the basis that the discovery request seeks information relating to products other than the Model IP- DUO60 V2 at issue in this litigation, seeks information relating to time periods not at issue in this litigation, and seeking information regarding incidents that are not substantially similar to the incident described in Plaintiffs' Amended Complaint, be overruled; and that Defendant Instant Brands be ordered to produce its entire claim files for all Instant Pot Pressure Cooker products where it has been alleged that the lid of the product opened while the unit was under pressure.

Plaintiffs further pray that Defendant Instant Brands' objections to Plaintiffs' Interrogatory No. 20 be overruled; that it be ordered to fully answer Interrogatory No. 20; and that it be ordered to produce without redaction the documents sought in Request for Production No. 6, where the customer identifying and contact information has been redacted.

Respectfully submitted this 31st day of May 2019.

*/s/ George E. McLaughlin*
George E. McLaughlin, #16364
Warshauer McLaughlin Law Group, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
720-420-9800
gem@w-mlawgroup.com

**List of Exhibits**

The following exhibits are referenced herein and attached hereto:

A.  Defendant Instant Brands Inc.'s Initial Disclosures.

B.  Defendant Instant Brands Inc.'s Responses to Plaintiffs' Written Discovery Requests – Set. No. 1.

C.  Photo of the subject Instant Pot.

D.  Photos of subject Instant Pot Identification Label.

E.  Copy of selected pages of the subject Instant Pot User Manual.

F.  February 25, 2019 Letter to Instant Brands' counsel re discovery disputes.

G.  April 26, 2019 Letter from Instant Brands' counsel re discovery disputes.

H.  Defendant Instant Brands Inc.'s Responses to Plaintiffs' Written Discovery Requests – Set. No. 5, Interrogatory No. 20.

I.  Instant Pot website pages produced in discovery. CvIP-00267.

J.  Instant Pot website pages presently available on its website.

K.  Instant Pot Replacement Part – DUO Lid.

L.  Underwriters Laboratories [UL] documents produced in discovery by Instant Brands. CvIB-00035 – 00085.

M.  Emails Dated December 8, 2016, CvIP-01115 – 01116 [CONFIDENTIAL]

N.  Drawings and Specifications CvIP-01111 – 01114 [CONFIDENTIAL]

O.  Selected pages of Customer #10, claim file

P.  Selected pages of Customer #12, claim file

Q.  Selected pages of Customer #13, claim file

R.  Selected pages of Customer #14, claim file

S.  Selected pages of Customer #15, claim file

T.  Commercial Liability Insurance Schedule, CvIP-01228 [CONFIDENTIAL].

U.  Press Release

V.  Photo of C.C.

W.  Photo of C.C.

X.  Photo of C.C.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2019, a true and correct copy of the foregoing **Plaintiffs' Memorandum of Law in Support of Motion to Compel** was served as follows:

Mark R. Davis
Jachimiak Peterson
1819 Denver West Drive, Suite 265
Golden, CO 80401
mdavis@jpfirm.law
*Attorneys for Defendant*

☐ By email
☐ By Facsimile Transmission
☐ By Overnight Delivery
☑ By CM/ECF System
☐ By First-Class U.S.

Dennis R. Callahan
Ward Greenberg Heller & Reidy LLP
1835 Market Street, Suite 650
Philadelphia, PA 19103
dcallahan@wardgreenberg.com
*Attorneys for Defendant*

☐ By email
　　☐ By Facsimile Transmission
☐ By Overnight Delivery
☑ By CM/ECF System
☐ By First-Class U.S.

*/s/ George E. McLaughlin*
George E. McLaughlin