1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     Case No. 18-cv-02611-MSK-STV
3    _____

4    MATTHEW COOPER and MARY COOPER,

5         Plaintiffs,

6    vs.

7    INSTANT BRANDS, INC, et al.,

8         Defendants.
     _____
9

10        Proceedings before SCOTT T. VARHOLAK, United States

11   Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 1:34 p.m., June 27, 2019,

13   in the United States Courthouse, Denver, Colorado.

14   _____

15        WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                        APPEARANCES

19        GEORGE McLAUGHLIN, Attorney at Law, appearing for

20   the Plaintiff.

21        MARK DAVIS and DENNIS CALLAHAN, Attorneys at Law,

22   appearing for the Defendants.

23   _____

24                       MOTION HEARING

25
```

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURT:  This is 18-cv-2611.  Can I have entries
 6    of appearance, please.
 7              MR. MCLAUGHLIN:  George McLaughlin on behalf of the
 8    plaintiffs.
 9              THE COURT:  Good morning.
10              MR. CALLAHAN:  Dennis Callahan for Instant Brands.
11              THE COURT:  Good morning.
12              MR. DAVIS:  Mark Davis, local counsel.
13              THE COURT:  Good morning.  So currently pending
14    before me are two motions.  The first -- the simplest, which
15    I'll take up first, is Number 76.  This is plaintiffs'
16    unopposed motion to extend the expert disclosure deadlines.
17    And I will grant that motion, and so that will extend the
18    claiming parties' deadline to designate experts to September
19    27, 2019.  That will extend rebuttal experts to November 12,
20    2019 and any reply experts to November 27, 2019.
21              Do the parties need, then, with that extended, the
22    discovery and dispositive motions deadline extended?  I -- I
23    know only that that puts -- I think the current discovery
24    cutoff is December 4.  So that doesn't give you a ton of time
25    to do any reply expert.
```

1         MR. MCLAUGHLIN:  I don't want to speak for the
2    defense, but my position would be, yes, I think we are going
3    to need additional time for the other reasons that are now
4    known; that there are going to be additional documents
5    produced; that the defendant needs time to get them; that
6    they'll be things my experts want to see.  We're probably not
7    going to be able to do meaningful depositions without having
8    to come back and do them a second time unless we get those
9    documents first.
10        So the fact that we're also, as of tomorrow, will
11   have a newly joined party entering its appearance and
12   defending and they need initial disclosures, et cetera, the
13   -- probably the whole schedule needs to be reconsidered
14        THE COURT:  What are you -- if I were to look at
15   setting a discovery cutoff near the end of January, does that
16   -- do you think that gives enough time to everybody?
17        MR. CALLAHAN:  I don't see an issue with that.
18        THE COURT:  Okay.
19        MR. CALLAHAN:  I mean, there -- there is a little
20   uncertainty.  I disclosed the -- the document issue to Mr.
21   McLaughlin within a day or two of discovering it.  I -- I
22   notified him yesterday or the day before.  I forgot which.
23   It was early this week.
24        THE COURT:  Okay.
25        MR. CALLAHAN:  And there's still a little

1  uncertainty because I don't have all the information.  I
2  wanted to -- I wanted to let the Court know, I wanted to let
3  my opponent know as soon as, you know, what I knew.
4           Optimistically -- well, maybe not optimistic.  I
5  think realistically looking at early August to complete what
6  we need to do, and if that happens and we don't have any
7  unforeseen problems, I think extending it -- you know, as you
8  suggested --
9           THE COURT:  Okay.
10          MR. CALLAHAN:  -- would be fine.
11          THE COURT:  Okay.  And which documents are these
12 that you're --
13          MR. CALLAHAN:  It's a little unclear to me.
14          THE COURT:  Okay.
15          MR. CALLAHAN:  I was -- I was notified by my client
16 that there were some sources of documents that they hadn't
17 considered in their original search.
18          THE COURT:  Okay.
19          MR. CALLAHAN:  So it could involve multiple
20 requests.
21          THE COURT:  Okay.
22          MR. CALLAHAN:  It's not a specific set.
23          THE COURT:  Okay.  Why don't we do this, then.  Why
24 don't we extend the discovery deadline to January 31 of 2020
25 and then I'll extend dispositives to February 28 of 2020.  So

1  I'll give you a month after discovery..

2  Okay.  So just so the record's clear, I'm granting

3  Number 76 and extending the deadlines as we -- as I've

4  indicated.

5  That brings me then to Document Number 52, the

6  motion to compel filed by the plaintiff.  That was responded

7  to by the defendant and plaintiff filed a reply.  This is

8  obviously an extension of an earlier discovery dispute that

9  we had in which I had issued a ruling and then more

10  information was brought to my attention after the ruling and

11  I asked for further briefing on it.

12  Having reviewed the motion and the response, as

13  well as the reply, I am going to grant plaintiffs' motion to

14  compel here.

15  Here what plaintiff is seeking is essentially the

16  information going back five years for tops that are nearly

17  identical to the one that is alleged to have improperly

18  opened or opened when it should not have opened, when it was

19  still under pressure, and plaintiff is seeking other

20  incidents where the same thing happened with, again, nearly

21  identical covers.  Now, they're different brands, but they

22  are nearly identical covers.

23  The objection being made is essentially two-fold.

24  The first is an objection as to relevance, arguing that these

25  are different cookers -- well, arguing first that these are

6

1  different cookers and, as a result, because they are
2  different cookers, they -- the -- what has occurred with
3  those or whether there have been other incidents is
4  irrelevant.  And, again, I -- I don't find that argument
5  persuasive.  The locking mechanism is purported to be nearly
6  identical, and, therefore, whether or not this will
7  ultimately be admissible at trial is a question for Chief --
8  former Chief -- now just Judge Krieger, but the -- I think,
9  clearly, for discovery purposes, the fact that similar
10 products with similar locking mechanisms are alleged to have
11 malfunctioned and opened while under pressure is relevant.
12         The second argument is that -- as to relevance is
13 that the allegations in this case are that the cooker opened
14 while it was de-pressurized as opposed to under pressure, but
15 I don't think that's what the complaint is alleging.  I think
16 the complaint is clearly alleging that the product opened
17 while it was under pressure and that it was a default of the
18 locking mechanism as opposed to it being opened while not
19 under pressure, and so, as a result, I think that these
20 additional items are relevant.
21         The second argument that's being made is that the
22 -- allowing the production of this is overly burdensome
23 compared to the value of the litigation and here I disagree
24 with that.  First, I note that it is defendants' burden,
25 since it is defendant who is resisting the discovery, to

1   demonstrate burden and they've failed to do so here.  They
2   have not indicated how difficult it would be to find these
3   items, and indeed, my guess is it's not that difficult,
4   because it appears that Instant Pot creates a ticket for
5   every incident of lid opening and my guess is these tickets
6   are stored somewhere, my guess is, electronically and can be
7   rather easily found and turned over.
8            The second related argument is that the medical
9   bills are not incredibly high in this, and, therefore, to go
10  -- to require the production of all of this is outweighed by
11  the medical bills.  Once again, that argument fails:  One,
12  because they -- there hasn't been an explanation as to how
13  difficult it will be to obtain these; and two, this case
14  isn't just about the medical bills.  The allegation is that
15  plaintiff was severely injured and indeed faces permanent
16  disfiguration.  And so I don't know, ultimately, if this goes
17  to a jury and if a jury does decide that this is malfunction,
18  what value a jury would place on that, but I cannot conclude
19  that this case is simply the 40-some-thousand-dollar medical
20  bills.
21           And so as a result, I am going to grant the
22  plaintiffs' motion to compel with respect to the production
23  of the information that is kept with these tickets -- the
24  packets of information that are kept with these tickets for
25  each incident in which the -- the pots that have been

identified in the motion have malfunctioned -- or the lids that have been identified in the motion have malfunctioned.

The second argument is whether or not a unredacted copy should be produced that would contain the information about the individuals who made these claims, the telephone number or address. And here, once again, I am going to grant the motion. I think that the information is certainly relevant, as I indicated before. I think that these individuals may have discoverable information. If they learned that there was some sort of malfunction, similar to the one alleged in this case, and they describe what happened, that may be relevant information. Indeed, they may be witnesses ultimately who could testify at trial in this case. Now, again, that ultimately is up to Judge Krieger and not myself, but they certainly are possible witnesses who could testify.

There's two arguments that are being made. The first is the privacy information of these individuals, and certainly I respect that and I will order that their names and other information be produced under a protective order as well as the medical records. The medical records, indeed, the parties may want to consider that being an Attorney's Eyes Only production of those.

The fact that they may be contacted by plaintiff's counsel, however, is simply part of the investigation that

1  goes on in any case in which an individual is a potential

2  witness with relevant information and may be contacted.

3        The second argument is that allowing this to happen

4  may lead to numerous depositions of these individuals.  And

5  here I think there are two things that protect against the

6  added expenses that may result from that.  The first is that

7  each side, in the scheduling order, is limited to a certain

8  number of depositions, and so the attorneys are going to have

9  to consider whether or not any individuals contain sufficient

10 information that would justify deposing them.

11       I'll note as an aside that I was a criminal defense

12 attorney for many years and I didn't get any depositions

13 before I went to trial, we just went to trial, and so I don't

14 think that every single one of these individuals would need

15 to be deposed.  Rather, they could simply be interviewed.

16       And relatedly is the fact that there are ways other

17 than depositions in order to find out this information.

18 Parties can contact them, find out whether they have

19 information.  Some of them may not.  Some of them may say

20 they don't know what happened or maybe their injury -- maybe

21 the alleged malfunction was different or maybe they didn't

22 suffer any injuries or maybe it was a mistake, but to the

23 extent that their -- that these individuals have relevant

24 information, I think that that should be discovered, and I

25 trust that the parties can manage their own expenses and

 1   determine what discovery needs to be done beyond that to try
 2   to avoid this case being -- rising attorney expenses
 3   significantly high.
 4          So that's my ruling with respect to the motion to
 5   compel.  I am granting it.  Is there anything further that we
 6   can do here today?
 7          MR. MCLAUGHLIN:  Yes.  I would like a produce by
 8   date.
 9          THE COURT:  How long does the defense anticipate?
10   I mean, I'll give you sufficient time to pull this together,
11   especially since I just extended discovery.
12          MR. CALLAHAN:  I'm hesitating because I'm not in
13   communication with my client.  I'm going to suggest six
14   weeks.
15          THE COURT:  That's reasonable to me, and I'll even
16   give you to the Friday.  So I'll give you until August 9th of
17   2019 to produce the documents.  Anything further from the
18   defense?
19          MR. CALLAHAN:  Yes, Your Honor.  I -- I want to be
20   sure -- I mean, I had mentioned -- I raised this with the
21   Court last time and I want to be sure that I understand it,
22   and I want to be sure that everybody understands what I am to
23   produce or my client is to produce.  You previously limited
24   it to Health Canada reports.
25          THE COURT:  I --

1          MR. CALLAHAN:  And I understand that's not your

2    ruling today.

3          THE COURT:  Right.  It -- it's these -- my

4    understanding is what has been produced to date is that when

5    -- or what exists out there, and certainly somebody correct

6    me if I'm wrong, but I think I'm right from the briefing, is

7    every time there is a report to Instant Pot about a

8    malfunction with the locking mechanism of one of their pots

9    and by their pots, I'm going to expand this to the models

10   that are identified in the motion to compel.

11         MR. CALLAHAN:  I understand.

12         THE COURT:  They create a ticket.

13         MR. CALLAHAN:  Correct.

14         THE COURT:  And as part of that ticket, there's a

15   packet of information that they keep with that ticket.

16   That's going to be the Health Canada reports, it's also

17   potentially any follow-up that goes with it.

18         MR. CALLAHAN:  Well, that's -- that's the part that

19   I want to clarify.

20         THE COURT:  Okay.

21         MR. CALLAHAN:  The ticket system -- there is a

22   reporting system, there is communications that happen through

23   that ticket system.  Sometimes there are exhibits attached,

24   sometimes there are photos, but what was -- the Health Canada

25   report is not part of that.  That's a separate place they

1   have to go search for that.  And I think the more time

2   consuming and burdensome piece was trying to search, and this

3   is what I -- I think we tried to do previously was search

4   people's e-mails for the Brown claim or the Smith incident or

5   whatever and that was burdensome and time consuming.

6            Are you -- are you ordering me to --

7            THE COURT:  I --

8            MR. CALLAHAN:  -- ordering me just to produce the

9   ticket information?

10           THE COURT:  I want the ticket information.

11           MR. CALLAHAN:  Okay.

12           THE COURT:  Let's produce that initially.  If -- if

13  there's an e-mail that's somewhere out there, I think that's

14  getting further afield as to the relevance.  What I think

15  plaintiff needs initially is the -- the information that's

16  kept with the ticket packet that contains whatever the

17  malfunction is, the individual's name with it.  Once they get

18  that information and -- and then any investigation that's

19  done and kept with that ticket.  Once they get that

20  information, then frankly they can go contact the plaintiffs

21  and find out any -- any additional information that they need

22  with it at that point.

23           MR. CALLAHAN:  Okay.

24           THE COURT:  Okay?

25           MR. CALLAHAN:  I understand, thank you.

13

```
 1              THE COURT:  All right.  Thank you, everybody.
 2   We'll be in recess.
 3              (Whereupon, the within hearing was then in
 4   conclusion at 1:49 p.m.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                    TRANSCRIBER'S CERTIFICATION
2    I certify that the foregoing is a correct transcript to the
3    best of my ability to hear and understand the audio recording
4    and based on the quality of the audio recording from the
5    above-entitled matter.
6
7    /s/ Dyann Labo                        July 25, 2019
8    Signature of Transcriber              Date
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```