**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER**

Civil Action No. 18-cv-02611-MSK-STV

**MATTHEW COOPER, and
MARY COOPER, as guardians and next friend of C.C., a minor,**

    Plaintiffs,

v.

**INSTANT BRANDS, INC.,
GUANGDONG MIDEA CONSUMER ELECTRIC MFG. CO.,
AMAZON.COM, INC.,
AMAZON.COM, LLC,
AMAZON SERVICES, LLC,
AMAZON SERVICES COLORADO, LLC, and
AMAZON.COM SERVICES, INC.,**

    Defendants.

---

**OPINION AND ORDER GRANTING MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART MOTIONS TO RESTRICT ACCESS**

---

    **THIS MATTER** comes before the Court pursuant to Defendant Guangdong Midea Consumer Electric Manufacturing Co.'s ("Midea") Motion to Dismiss for Lack of Personal Jurisdiction **(# 92)**, and the Plaintiffs' ("the Coopers") response **(#93)**. Also pending are two Motions to Restrict Access **(# 67, 73)** filed by Defendant Instant Brands, Inc. ("Instant"), to which no opposition papers were filed.

    According to the Amended Complaint **(# 19)**, the Coopers purchased an Instant Pot pressure cooker, a product designed and marketed by Instant, manufactured for Instant by Midea in China, and distributed by the various Amazon Defendants. The Coopers were using the cooker in 2017 to make soup when "the lid blew off, releasing with sudden and great force the

1

steam and pressure that was still contained within . . . spewing its scalding contents onto the face, shoulder, arm, chest, and torso" of the Coopers' minor daughter.

The Coopers allege claims, all apparently arising under Colorado statutory or common law, as follows: (i) strict product liability under C.R.S. § 13-21-401; (ii) common-law negligence; (iii) violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*; (iv) breach of implied warranty; (v) breach of express warranty; and (vi) "wanton and reckless conduct," all apparently asserted against all Defendants. The Coopers premise this Court's subject-matter jurisdiction on diversity of citizenship under 28 U.S.C. § 1332.

### A. Midea's Motion to Dismiss

Midea moves **(# 92)** to dismiss the claims against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), arguing that it is a Chinese company with no contacts in the State of Colorado. The Cooper's response concede the arguments made in Midea's motion and consent to the dismissal of Midea on jurisdictional grounds. Accordingly, Midea's motion is granted.

### B. Motions to restrict

Instant has filed two motions **(# 67, 73)** seeking to restrict public access to certain filings pursuant to D.C. Colo. L. Civ. R. 7.2. Instant's motions to restrict relate to a May 31, 2019 Motion to Compel **(# 52)** filed by the Coopers. That motion was supported by a Memorandum of Law **(# 53)** containing certain redactions, as well as several exhibits, most of which had been produced through discovery by Instant. Contemporaneously with that motion, the Coopers filed a Motion to Restrict **(# 64)**, seeking to prevent public access to the unredacted Memorandum of Law and certain supporting exhibits, citing solely to the fact that the materials in question had been designated as "confidential" under the parties' stipulated protective order.

The Court denied in part **(# 65)** the Cooper's motion, finding that it failed to satisfy the requirements of Local Rule 7.2(c)(2)-(4). Those provisions require: (i) identification of the private interest to be protected and a showing as to why such interest outweighs the public interest in access (and which specifically provides that "stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction); (ii) identification of a clearly-defined and serious injury that would result if access is not restricted; and (iii) an explanation as to why all alternatives to restriction (such as redaction or summarization) would not adequately protect the private interest.

Instant then filed these motions, effectively asking the Court to reconsider its denial of the Coopers' motion to restrict, offering further explanation as to "why [Instant's] documents are confidential and should be subject to restricted access." Instant's motion at Docket #67 is supported by only skeletal argument, filed quickly after the Court's denial of the Coopers' motion. Instant's motion at Docket #73 seeks to restrict the same documents as Docket #67, but offers a more detailed explanation of Instant's requests. The Court treats both motions as a single, combined motion to restrict.

The Court will not repeat the familiar standards governing motions to restrict access, except to note the public's substantial interest in having access to review materials that have been filed with and considered by the Court in reaching its decisions. Local Rule 7.2 reflects the presumption of public access to such documents and places the burden on the party seeking restriction to demonstrate that specific privacy interests overcome the public interest in access. With those principles in mind, the Court turns to the specific documents at issue in Instant's motions, addressing each document subject to the motion in turn:

• **Docket #55** (Exhibit M to the Coopers' Motion to Compel): this document is a December 14, 2016 e-mail from Carl Chan, a salesperson at Midea, to Dong Jun Wang, whose title is unknown. The contents of the e-mail are written in Chinese script. No translation of that document has been provided. The Coopers' briefing on the Motion to Compel represents that "translations [of the document] appear to reference 'Forced opening of DUO Series Products'" (that is, the brand of cooker used by the Coopers).

Instant's motion states that this exhibit is a "proprietary design document[ ]" that contains "a discussion . . . of features of the design and the engineering of the product at issue." It states, in entirely conclusory terms, that "this information is highly confidential as it is sensitive business information and design specifications over which Instant [ ] has a proprietary interest."

The Court cannot meaningfully assess the privacy interests implicated by Docket #55 because it is written in a foreign language and no meaningful translation of it has been provided. Without the ability to understand <u>what</u> the document says, it is impossible to ascertain <u>how</u> its public disclosure could affect Instant's interests. The Court's inability to read the document also affects its ability to assess the public interest in access to it. The public's interest in access to judicial records derives from the public's entitlement to review the materials considered by the Court, so as to evaluate the completeness and correctness of the Court's decision-making. Concealment of documents that were specifically considered by the Court serves to conceal the judicial process from public view, creating "secret court proceedings [that] are anathema to a free society." *See M.M. v. Zavaras*, 939 F.Supp. 799, 801 (D.Colo. 1996). But where a document has <u>not</u> been considered by the Court in reaching a decision, the public interest in access to it is diminished. *Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752, 755 (10th Cir. 2009). Because the Court cannot read Docket #55, it cannot have based any of its findings on

the contents of that document. And if the Court did not base its findings on the document, the public interest in access to the document is low.

Accordingly, because there is no indication that the Court read, much less relied upon, Docket # 54 in resolving the Coopers' Motion to Compel, the public interest in access to it is minimal. Although Instant has offered only conclusory and perfunctory explanations of its privacy interest in the document, in the particular circumstances herein, those perfunctory explanations are sufficient to overcome the minimal public interest. Accordingly, Docket # 55 will be placed under a Level 1 restriction.

• **Docket #56** (Exhibit N to the Coopers' motion): Like Docket #55, this document is also written in Chinese script and no translation has been provided to the Court. The document differs from Docket #55 in that, along with the Chinese text, it contains three drawings of what appear to be a cross-section of the mechanical operation of a portion of the cooker in question, along with four photographs of specific parts of the cooker. The Coopers' motion cites to this exhibit only for the proposition that "the design drawings and specification document appears to acknowledge that this problem [of the cooker unexpectedly opening] was due to 'occasional factors such as poor incoming materials'" and that "the design strength of the lid lock material is weak." The Coopers do not indicate that the mechanical drawings or photographs themselves establish the proposition they cite; rather, it appears that they are relying on some portion of the untranslated Chinese text for that proposition.

Instant offers the same explanation of its privacy interest in Docket #56 as it did for Docket #55.

For the reasons discussed with regard to Docket #55, the Court finds that there is a minimal public interest in access to Docket #56, and that whatever minimal privacy interest

Instant has demonstrated in that document is sufficient to overcome the public interest. Thus, Docket #56 will be placed under a Level 1 restriction.

• **Docket # 57** (Exhibit O.2 to the Coopers' motion), **Docket #58** (Exhibit P.2), and **Docket #59** (Exhibit Q.2): All three of these documents roughly share the same form, with only inconsequential differences. Each appear to be a report made by Instant to an agency of the Canadian government, Health Canada's Consumer Product Safety Directorate, describing a customer complaint of an incident involving an allegedly-faulty Instant product, and Instant's response to that complaint. It appears that Instant was required to make these reports pursuant to the Canadian Consumer Product Safety Act. Each document consists of a form, created by Health Canada and completed by Instant. The forms describe the incidents (*e.g.* "[Instant] received a report from a customer . . . advising that he had sustained burns to his arms as a result of a discharge of hot liquid from the Company's Duo-60 unit . . . ."), describe the product and the warnings Instant has given in conjunction with the product's use, and describe Insight's response to and conclusions regarding the complaint (*e.g.* "The company contacted the Customer to request additional information . . . about the water levels and the ingredients that were used. . . Based on the limited information provided by the Customer, the Company does not have any reason to believe the events described were due to any deficiency in the operation or design of the Subject Unit . . . ."). The forms do not identify the customer making the complaint in any way. The Coopers' motion cites to these documents only once, collectively, for the proposition that the "products at issue did not come onto the market until December 2, 2013," referencing Section 6 of the form.

Instant's motion argues that these documents are "designated as confidential under Canadian law," and are "protected from disclosure under Canada's Access to Information Act"

(although it offers no citation to that Act). It does not appear that Instant is contending that Canada protects the information because it might disclose private interests of the customers making the complaints; rather, it is clear that Instant argues that Canada protects the documents from disclosure because they might reveal "trade secrets," "financial, commercial, scientific, or technical information [that] is treated consistently in a confidential manner," and "information . . . which could reasonably be expected to result in financial loss or gain to" Instant, the party providing the information to the Canadian government. Moreover, Instant explains that restricted access to these reports is necessary not to avoid violation of Canadian law, but to protect "Instant['s] business interest in protecting the information contained in the incident reports to protect its competitive advantage."

Nothing in these documents can be said to implicate any trade secret or competitive information belonging to Instant. The forms describe, in extraordinarily general terms, the fact that Instant had received customer complaints about a cooker that unexpectedly discharged hot liquid. In at least one instance, Docket #59, Instant indicates that it discovered the customer complaint through "a comment on the Company's Facebook community web page." Thus, the public disclosure of the incident by the customer in an open internet forum defeats Instant's ability to contend that the fact of the complaint itself is somehow "confidential" information that cannot be disclosed. The remainder of Instant's responses on the form are generic descriptions of the product and entirely unremarkable discussions of Instant's responses to the incidents (*e.g.* contacting the customer, requesting information, and requesting return of the product for further analysis). Instant has not identified how disclosure of such general information can be reasonably understood to constitute disclosure of a trade secret or confidential commercial

7

information. Thus, the Court finds that Instant's privacy interest in these documents is relatively low.

At the same time, it is unclear to the Court why it was necessary for the Coopers to attach the entire form – indeed, <u>three</u> entire forms -- when the only proposition they cite it for is the fact that the cooker was released to the market on a certain date. It does not appear that the date in question is disputed, and thus, this is a situation where communication between counsel for the Coopers and Instant would very likely have yielded a stipulation as to the date the cooker went on the market, eliminating both the need for the Coopers to attach an exhibit to establish that fact <u>and</u> the need for a motion to restrict access to that exhibit. In short, this is precisely the situation that Local Rule 7.2(c)(4)'s requirement was intended to avoid. The public might have a significant interest in access to the one portion of the form(s) identifying the market date of Instant's cooker, but the public's interest in access to the remainder of the form -- portions the Court was not asked to review – would also be low.

The Court finds that Instant's privacy interest in restricting access to the documents and the public's interest in access to the documents in their entirety are effectively in a low-level equipoise. As such, the presumption of public access to judicial records controls the outcome. Because Instant has not <u>overcome</u> the presumption that documents filed with the Court will be made public, the Court denies Instant's motions. Docket #57-59 will remain publicly-available.

• **Docket #60** (Exhibit T to the Coopers' motion): This document is a single page, appearing to be the declarations page of a Commercial General Liability insurance policy issued by Allianz China General Insurance Company to "Midea Air-Conditioning Refrigeration Group and/or Midea Group" (and its subsidiaries). The document identifies the coverage limits for certain categories of coverage. The Coopers' motion cites to this exhibit once, for the

proposition that the Coopers have learned that Instant "is being defended pursuant to an indemnity agreement with the manufacturer [Midea]." (The Coopers cite to two other exhibits as establishing this fact as well, and Docket #53-1, which is not restricted, establishes the cited fact more directly than Docket #60.)

Instant's initial motion argues that this document should be restricted because it "relates to entities other than Instant [ ] and contains business and policy information of entities other than Instant." Its subsequent motion appears to abandon its request to have this document restricted, stating that it "does not eek to extend confidential protection to Exhibit T in the form attached." Accordingly, the Court deems Instant to have withdrawn a request to restrict access to Docket #60.

• **Docket # 54**: The Court returns to this document last because Instant's arguments regarding it are derivative of the documents discussed above. Docket #54 is the un-redacted version of Instant's Memorandum of Law (Docket #53) in support of its Motion to Compel. The portions of the Coopers' motion that were redacted refer to the Coopers' discovery from "confidential documents" about certain communications that Instant has had with Midea about problems "with inadvertent opening of the lid" in products like the one used by the Coopers, and Midea attributing those problems to "occasional factors such as poor incoming materials" and because "the design strength of the lock material is weak."

Instant's motion's argument regarding this document incorporate its arguments for restriction of Docket #55-59 (and the Court finds that only Instant's arguments regarding Docket #55 and 56 are germane). As discussed above, Instant's concerns regarding disclosure of Docket #55 and 56 relate to its concern that competitors could use those documents to copy its design elements. But unlike Docket #55 and 56, the redacted portions of Docket #53 do not discuss any

characteristics of Instant's cooker design in any meaningful detail. The redacted material describes, in very general terms, defects in the materials used by Instant to implement its design and a weakness in the "design strength of the lock material," but do not duplicate any design schematics or otherwise describe in any detail how Instant's cooker is actually designed and built. Thus, it is unclear to the Court how a competitor of Instant could read the generalized language redacted from Docket #53 and make different design or manufacturing choices (other than, perhaps, "use stronger materials" or "design a stronger lid lock"). And, in any event, the communications between Instant and Midea in Docket #55 and 56 concern <u>defects</u> in Instant's design. Instant can hardly be concerned about suffering any injury if its competitors copy a design element that may be defective. Thus, the Court finds that Instant's privacy interest in the material redacted in Docket #53 is relatively low.

The public interest in understanding the basis for the Coopers' claim is substantial. Allegations of design and manufacturing defects in Instant's cooker are the central thrust of the Coopers' allegations in this suit, and evidence that tends to establish the existence of such defects and Instant's knowledge of them are matters in which the public has a substantial interest. Weighed against Instant's minimal privacy interest, the Court finds that the unredacted Memorandum of Law at Docket #54 is appropriate for public access. Thus, Instant's motion seeking to restrict access to Docket #54 is denied.

### C. Conclusion

For the foregoing reasons, Midea's Motion to Dismiss **(# 92)** is **GRANTED**. All claims against Midea are **DISMISSED** for lack of personal jurisdiction and the Clerk of the Court shall terminate Midea as a Defendant in this case. Instant's Motions to Restrict Access **(# 67, 73)** are **GRANTED IN PART AND DENIED IN PART**. The Clerk of the Court shall place Docket

#55 and 56 under a Level 1 restriction, but Docket #54 and #57-60 shall remain publicly-available.

Dated this 21st day of February, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge